Chief Justice Marshall
delivered, the opinion of the Court.
This action of assumpsit was brought by Mardis as the assignee against Tyler, the payee and assignor of two notes drawn by J. N. McMichael, one for $1615 17, due the 1st of June, 1841, the other for $2000, due on the 1st day of June, 1842, in each of which a lien was retained by Tyler on certain property for the purchase money thereof. The declaration, after describing the notes as above, states, that shortly after their date, McMichael, for securing their payment, executed to Tyler a mortgage, duly recorded, on the same property mentioned in the notes, and also on all other property owned by him which was subject to execution ; that on the 20th of November, 1840, Tyler, for a valuable consideration, assigned the said notes to Vance & Mardis; that said Vance & Mardis, on the 23d of June, 1841, assigned them without recourse to the plaintiff Mardis, who was one of said firm of Vance & Mardis, and one of the immediate assignees ; that on the 28th day of June, 1841, Mardis instituted in the Louisville Chancery Court a suit upon said mortgage, and such proceedings were had therein that, after a decree nisi, ■ a decree for the sale of the property, mentioned in the notes and mortgage, was rendered at the January term, 1845, and the same was regularly sold on the 10th of March, 1845, which was reported to the Court; that $1505, the proceeds of the entire property was credited on the first due of said two notes, and that the plaintiff had expended in the prosecution of said suit $-in lawyer’s fees and costs, of all which the defendant had due notice. And the plaintiff further avers, that owing to the insolvency of said McMichael *377 then, before and now, he has been unable to collect any further sum of the amount aforesaid; that on various occasions during the pendency of said chancery suit, the defendant, “in consideration of his liability as asasignor, whenever said chancery suit should be decided and the said McMichael’s property should be sold and exhausted, agreed and promised the plaintiff that as soon as the mortgage was foreclosed and the property therein specified was sold, that whatever balance was uncollected and unpaid by the sale thereof to the plaintiff, he, Tyler, would immediately thereupon pay to the plaintiff the amount unpaid and uncollected by the sale of said property,” and that there remained uncollected of his demand against McMichael, on said notes, the sum of $-, besides interest and costs, &c. By reason of which undertaking and promise, the defendant hath become liable to pay the amount due on said notes with interest, &c., and the lawyer’s fees and costs, &c., except the amount made by the sale aforesaid, and being so liable promised to pay, &c. Arid the plaintiff avers that, relying and confiding in the defendant’s promise to pay him the balance due after the termination of the chancery suit and the sale of the property aforesaid, he did not bring and prosecute any further suit — nevertheless, &c.
The foregoing is the substance of the second count in the declaration, which differs from the first only in averring that the assignment by Tyler to Yance & Mar-dis was for a valuable consideration, and in stating the promise to pay what might be unpaid by the sale of the mortgaged property, &c. A third count for money had and received was afterwards added. The defendant demurred to each of the counts, and also pleaded non-assumpsit, on which issue was joined, and that the cause of action had not accrued within five years, which was traversed and an issue thereon. The demurrers to the two first counts having been sustained, the plaintiff withdrew the third count, and a judgment was rendered in bar of the action.
A remote assignee has no right of action against a previous assignor, though he may sue in the name of his assignor, between whom and his assignor there may be a right of action.
Thé assignment of one of two assignees to the other does not authorize a suit at law in his name.
First count of declaration adjudged defective.
With regard to the first count, we need only say that being founded on the implied liability of Tyler, as assignor of the notes, the right of action, if- any be shown against him, abides in his immediate assignees, Vance & Mardis. And, although the right of action on the note passed by their assignment to Mardis, the liability of Tyler, as assignor, was not assignable so as to vest any legal right or title in their assignee, and at most their assignment to Mardis invested him with an equitable interest in the liability of Tyler to them, and with the right, under proper circumstances, of asserting that liability by an action in their name for his benefit, or a right to assert it in equity. The circumstance that Mardis was one of the original assignees, does not affect the principle. If, after the assignment to Vance & Mardis, Vance alone had assigned his interest in the notes to Mardis, this would not have invested the latter with the legal title to the notes, and much less with the entire legal title or interest- in the liability of Tyler, which was not assignable, and did not and could not pass by the joint assignment of both, as one of the original assignees, Mardis had a joint right of action with Vance upon the notes and upon the assignment. As the assignee of Vance & Mardis he had the sole right of action in his own name upon the notes. But even if this assignment had not been expressly without recourse, he would have had no legal remedy against Vance & Mardis upon their assignment, because he was one of the assignors, and no legal remedy against Vance alone for substantially the same reason.
Since Mardis as the assignee of Vance & Mardis, and thus the remote assignee of Tyler, had not the legal interest and right of action on the assignment of Tyler, or on his liability as assignor, and since, as one of the two original assignees, he had only a joint right of action on the assignment or liability of Tyler, it follows that he has no separate right of action against Tyler merely upon his assignment or on his liability as assignor, but must ground his action, if he has any, upon some other contract or liability. The first count, *379 therefore, is fatally defective, because, whether Tyler remains liable upon his assignment or riot, the right of action is not in Mardis alone. And as the same is true of the second count, unless the additional grounds of action therein stated are sufficient, the question whether such diligence had been used against the obligor in the note as on that ground to fix the liability of the assignor, becomes even on the second count an immaterial, or at most a secondary enquiry, the material question being whether the promise, as therein alleged, is sufficient to sustain the action.
Tyler sold property to Me., took notes reserving a lien for the consideration--assigned the note to V & M. V assigned to M. T took a mortgage uppn the property with all the other property of Me. M foreclosed this mortgage St then brought assump-1 sit against T, not having prosecuted any suit against Me., alleging that T, in consideration of his liability a_s assignor, promised to pay as soon as the mortgage property was disposed of. Held that there being, as appears, a moral obligation on the part of T, it wasnotneces'saryto avermore than an express promise to pay.
The circumstances of this case are certainly peculiar in the fact that Tyler the payee and assignor had not only reserved on the face of the notes a lien upon the property for which they were given, but had also taken a'mortgage upon the same and all other property of the obligor which could be reached by execution, leaving him insolvent, except so far as this mortgaged property might suffice to discharge the debt. It is a serious question whether, under these circumstances, the assignor having, by his own act, made the remedy in chancery the only efficient one by withdrawing the whole of the obligor’s property from, the reach of the legal remedy against him, he should not be considered as so far changing the rule of due diligence requisite for fixing his liability, as to dispense with the pursuit of the legal remedy which he had rendered wholly useless, and to make the proceeding in chancery and its result the test of diligence and liability, instead of the ordinary proceeding at law. If this should be assumed to be the effect, either in law or equity, of the circumstances stated, then, as the failure to use the diligence ordinarily required by action at law, did not discharge the assignor from liability, there was certainly a sufficient consideration for his promise during the progress of the chancery suit, or even at its termination, to pay what might remain unpaid by the appropriation of the mortgaged property. If, without the promise, a Court of Equity would have regarded the responsibility of Tyler as undischarged by the failure *380 to sue the obligor at law, and would have enforced that liability, the express promise founded upon it would create a legal liability, enforcible in a Court of Law, and by action of assumpsit.
But waiving this proposition and its consequences, we think it clear, that the circumstances referred to, were calculated to withdraw the attention of the assignees from the legal remedy as a means of fixing the liability of the assignor, and to make them look to the remedy in chancery, which they were bound to pursue, as in itself sufficient for the purpose. And as the assignor might, undoubtedly, waive the necessity of strict legal diligence, as the test of his liability before it was actually discharged, we think that if the circumstances stated should have no greater effect, they should at least have that of establishing such waiver by slighter indications of an intention to dispense with the strict rule of diligence than would be otherwise required. In this view of the subject, we are not prepared to say that a promise, at'any time during the pendency of the chancery suit, to pay, at its termination, whatever of the plaintiff’s demand should not be collected by the due course of that remedy, should not be taken as implying a consent from the beginning that the prosecution of that remedy, should be sufficient to test and fix his liability, and as thus establishing a waiver of the rule of legal diligence. But if this be so, we suppose that if a waiver of the oi’dinary rule of diligence is necessary to sustain the promise, it would be necessaiy to aver the waiver in pleading, even if the promise should be deemed sufficient, with the other circumstances stated, to establish it in evidence, as is the case with regard to the averment of a request, as necessary to support the promise in pleading, though it may be implied in evidence.
The second count does not aver a waiver of legal diligence, and the question is whether it shows a sufficient consideration for the alleged promise. It avers that the defendant in consideration of his liability, as assignor, &c., promised, at various times during the *381 pendency of the chancery suit, to pay, &c., and that the plaintiff relying on this promise did not sue further. If the defendant was in fact liable when the first promise was made, that liability, it is admitted, was a sufficient consideration for the promise. But it is assumed in the argument, on his part, that he was not liable. The declaration, however, must be considered as averring, by necessary implication at least, though not as explicitly as might have been done, that he was liable. And the propriety of assuming the contrary on the demurrer, depends upon the question whether it was necessary to aver all the circumstances which showed his liability. For if it was, the cirsumstances not being shown, the liability not appearing, is taken as not existing. But the liability of the defendant, as assignor, is not the foundation of the action, but merely the consideration of the promise on which it is founded; and is, therefore, in the nature of an inducement, which need not be circumstantially alleged, as in the case of an action upon a promise to pay the debt of another, or the previous debt of the promiser, and even in indebetatus assumpsit for goods, &c., sold and delivered, the particulars need not be stated. Here it appears that the relation of assignor and remote assignee existed between the parties, implying a contingent liability in the former to his immediate assignees, which would be available to the remote assignee, and which it was his interest and duty to fix by reasonable diligence. And it appears that the suit in chancery was brought certainly before there had been any negligence with respect to the last note, which was not then due for about a year, and probably before there had been any discharge by negligence with respect even to the first note, which had not been due a month.' Then, without referring to the other circumstances before mentioned, which render it probable or easy to infer that the assignor was to continue liable, are we to assume the liability in consideration of which the promise is alleged to have been made, was absolutely determined before the first promise?
Ifaparty make a promise in consideration of a moral obligation ■which he may waive, he is hound to perform: (Kent, 5 ed. 113; Chit, on Con. 47, note 3; Bank Iiy. v Ray, 3 B. Mon. 510,) not inconsistent with Ralston v Bullett, 3 Bibb, 102.
The declaration, might have averred that the first promise was made when the plaintiff might have sued on the first or on the second note in time for judgment at the first court, and this would have been more satisfactory. But we are inclined to the opinion that the averment that the defendant, in consideration of his liability, as assignor, promised, should, when taken in connection with the other facts stated, be deemed sufficient to repel the presumption that the promise was made after the defendant, who must be presumed to have understood his own situation and responsibility, had become completely discharged from liability; and in this view the second count is good.
But if this view be incorrect, still the question remains whether if the defendant was discharged from liability, as assignor, by the failure to sue the obligor at law, he might not waive this discharge and make a promise, which being founded at any rate on a moral obligation arising from'his assignment of the notes for a valuable consideration, and certainly enhanced by the circumstances, already more than once referred to, would be legally obligatory upon him. We admit that such a promise, if made in ignorance and mistake of his rights and under the belief that he was legally liable where in fact he was not, would not be binding. But such ignorance and mistake are not to be presumed, but if relied on, must be shown by the party claiming the benefit of them. And we are of opinion that unless the promise was made under the mistaken supposition of liability, that is, if it was made with a knowledge of the facts and the law, there was a sufficient consideration to support it, though made when the defendant was no longer subject to a legal liability as assignor.
It is expressly laid down in Chitty on Contracts, p. 47, that on the ground of a moral obligation, and that a party may waive rules of law introduced for his own benefit, a party to a bill who is discharged for want of due notice of its dishonor, is liable if he subsequently promised payment. And the text is supported by various cases referred to in note O, on the page above ci *383 ted. The principle implies that the promisee should have knowledge of the fact of want of due notice; but this knowledge may be inferred from the promise and attendant circumstances without express affirmative proof: (3 Kent's Com. 5th ed. 113; Chitty on Con. 47, note a 3, and cases there cited.)
Williams fy Graves for plaintiff; Guthrie Sf Tyler for defendant.
This principle is, as we think, just and salutary and conformable to the general doctrines of the law. It seems to be recognized, impliedly at least, in the case of the Bank of Kentucky vs Ray, &c., (3 B. Monroe, 510,) where the question of liability is put mainly upon the ground of ignorance or knowledge of the facts and law; and it is not inconsistent with the case of Rallston vs Bullitt, (3 Bibb, 102,), where the pleas showed that the new liability had been assumed under the supposition of an existing legal liability.
We are of opinion, therefore, that the-second count is good, and that the Court erred in sustaining the demurrer thereto.
Wherefore, the judgment is reversed, and the cause remanded with directions to overrule the demurrer to the second count, and for further proceedings.