Chibe JusireE Simpson
delivered the opinion of the Court.
Nathaniel Wickliffe, and B. Abell, two of the creditors of Dabney C.- Cosby, dec’d., instituted separate suits in chancery against his heirs, to subject to the payment of their demands, some estate which they eon- *203 tended liad belonged to him in his lifetime, and was liable for the payment of his debts. To sustain the jurisdiction of a Court of Chancery, it was alleged that no person had administered upon his estate, and that his children and heirs at law, were non-residents. B. Abell administered on the estate during the pendency of the suits, and having been made a party to the suit in the 3iame of Wickliffe, he filed an answer and cross bill in that suit, asserting a right to have his debt paid out of the fund that Wickliffe was attempting to subject to the payment of the debt which was due to him. The two suits were consolidated and heard together, and a decree rendered by wThich both the demands were satisfied. From that decree the heirs have appealed.
It appears that Cosby in his lifetime had mortgaged his interest in his father’s estate, being an undivided in - terest in remainder after the death of his mother, to a man by the name of Harlan, who had afterwards by a suit in chancery obtained a decree for the sale of the interest, for the payment of the mortgage-debt, and that the commissioner who was appointed to make the sale, reported that he had sold the entire interest to Susan-nah Cosby, the mother of Dabney C. Cosby, whose report was confirmed, and a conveyance executed by a commissioner, iq conformity with the report conveying the entire interest to the purchaser, who afterwards conveyed'the same .to the children of her son, Dabney C. Cosby, he having departed this life. These facts-having been developed during the pendency of the suits, and the object of Wickliffe’s suit having been to subject this interest to the payment of his demand; he filed an amended bill in which he alleged that the commissioner under the aforesaid decree, had in reality sold only two-thirds of the interest, and that he had either by mistake, or by fraud and collusion with the purchaser,'reported to the Court that he had made a sale of the whole interest, instead of a sale of two-thirds, and in consequence thereof, the entire interest had been conveyed to the purchaser, and had passed to the chil *204 dren and heirs of Dabney C. Cosby, by the conveyance made to them, one third of ■which, was liable to the payment of his demands. The heirs denied the alleged fraud or mistake, and insisted that the entire interest had been told by the commissioner, and purchased by Susannah Cosby.
The chancellor has jurisdiction to relieve against mistakes. A commissioner ap pointed by a decree of the chancellor to sell, sold two-thirds of the estate, but reported to the Court that he had sold the entire estate, and in obedience to the order of the Court, conveyed the whole — but it appeared clear 3y, by his certificate of sale, given to the purchaser at the sale, & by other evidence, that two-thirds only, was jn fact sold:— Held that the mistake should be corrected.
The mistake in the report is fully and clearly established by the testimony. The certificate subscribed by the commissioner on the day of the sale, and given to the purchaser, states that she liad purchased two-thirds of the interest only. Another bidder proves that he had made a bid proposing to pay the amount for which the decree authorized the commissioner to sell, for less than the whole interest, and that he was under bid by the purchaser. The purchase was not made by Susan-nah Cosby in person, but by her agent, who also testifies that he purchased for her, only two-thirds of the interest. The recollection of some of the witnesses is, including the commissioner who made the sale, but whose recollection about the matter seems to be very indistinct, that the entire interest was sold. And as their recollection is supported by the commissioners report, tlie matter would be involved in some doubt and uncertainty, were it not for the certificate of sale executed by the commissioner on ihe- day on which the sale was made. That certificate was found among the papers of the purchaser after her death by her executor, and when considered in connection with the other testimony upon the subject, leaves no room for any rational doubt, that the commissioner who did not make his report of the sale until four months had elapsed, then reported by mistake or inadvertance contrary to the actual fact that he had sold the entire interest.
The mistake was the act of the commissioner, and not of the Court, and although the title passed to the purchaser by the conveyance made by order of the Court,, and was subsequently conveyed to the children of D. C. Cosby, yet as the conveyance to them was without any valuable consideration, they hold one third *205 of it, as their grantor had also held it, in trust for their father’s creditors. The question as to the mistake was expressly made in the pleadings, and it has been litigated by the only parties interested in its decision. It is the peculiar province of a Court of Chancery, to afford relief to the parties prejudiced by a mistake, and in doing it in this case, no principle of law or aquity is violated. On'the contrary, as the purchaser by the mistake of the commissioner, acquired property that she had not purchased or paid for, it would be unjust to permit it to be held by her or her voluntary donees, against the claim of creditors.
B. Abell alleged in his bill, that assets had descended from Dabney C. Cosby to his children and heirs at law. That since the death of their ancestor, they had as his heirs at law, brought an action of ejectment against a certain William McDonald, for a tract of land which had thus descended to them, and had compromised the suit, and conveyed or agreed to convey their title to McDonald, who had paid them for the land a considerable sum of money, which money was liable in their hands as assets for the payment of their father’s debts. The heirs answered and admitted that such an action had been brought by them and compi’omised, an agreement having been made between them and McDonald, by which the latter agreed to pay each of them, there being three, the sum of one hundred and fifty dollars, and they were to convey to him whatever title they had to the land. They further stated, that the land had been sold as the property of their father by the sheriff by virtue of an execution in his hands, and that McDonald bought it from the purchaser, and held the possession under that purchase; that having understood there was some defect or irregularity in the sale, the action of ejectment was brought by them to recover the land, but having become doubtful of success the suit was compromised. They contended that McDonald’s title to the land was valid, that no title to it. ' had descended to them from theiy father, and that the *206 only inducement that McDonald had to agree to pay to them the amount stipulated, was to purchase his peace,and relieve himself'from an expensiveand troublesome litigation, and the money was not, therefore, liable in their hands, to the payment of their father’s debts. The deposition of McDonald contains the only testimony upon the subject. He proved that he had compromised the action of ejectment with the heirs, and paid them four hundred and fifty dollars, and received from them a conveyance of their title to the land. ’ He also proved that he regarded his title as good, and was informed by his legal advisers that he could defeat a recovery by the heirs, and had made the compromise with them alone for the purpose of purchasing’his peace, and terminating an expensive law suit, but he also stated explicitly, that he would not have paid them the money without an agreement on their part for the conveyance of their title. He did not prove the nature of his title or of the claim of the heirs, nor does either appear from any thing contained in the record.
Where heirs at law brought a suit to enforce a claim to land, and receive money by way of compromise, the heirs are liable to the creditors of the lather.
As the action of ejectment was brought and the recovery sought by them as heirs of their father, who had owned .the land in his lifetime, and no other right to it was claimed by them, the proceeds of the suit resulting from the compromise must be considered at least prima facie, as the avails of a right which had descended to them from their ancestor. The suit was founded on that right alone, and in the absence of all testimony as to the exact character of their claim, it must be regarded as having been1 of sufficient importance to authorize the institution of the suit, and to produce the compromise. Whether, if it had appeared clearly and conclusively, that the title of McDonald was good and valid, and no right or title had descended to the heirs from their father, the money obtained by them by way of compromise, should be treated as assets in their hands, it is unnecessary to decide. For as the case stands, that question is not presented; and when a. *207 claim has been asserted by heirs to property which had belonged to their ancestor, and a compromise made, the avails of the compromise, deducting the expenses incurred in the litigation, must be regarded as resulting from the title which had descended from the ancestor, .and consequently as assets in their hands, at least, until they make it manifest that no right or title had descended. The claim, whether real or pretended, was derived from the ancestor, and it was alone in consequence of his having been the previous owner of the land, that his heirs were enabled to maintain the suit. If, as stated in the answer, the attempt to recover the land from McDonald, was based upon the supposed invalidity of the sheriff’s sale, in consequence of his having sold the land for a sum exceeding the amount of the execution, that was an effort which they could make alone in the character of heirs, and had they succeeded in the suit, and recovered the land, it would have been assets in their hands; and they have not made it appear that such a recovery could not have been had, if the suit had been prosecuted to its final issue. It seems to us, therefore, that the compromise money was properly regarded by the Circuit Court as assets in their hands, and as the amount they were decreed to pay, still left remaining in their hands a sum sufficient to pay the whole expense of the action of ejectment, there was no error in that part of the decree.
Rountree 4* Fogle, and Shuck for appellants; Harlan for defendants.
The consolidation of the two suits was proper, and the order made for that purpose did not prejudice the appellants.
Wherefore the decree is affirmed.