## H. O. KENDALL *v.* RAWLEIGH KENDALL'S EX'R.

### Compromise and Settlement—Lack of Diligence.

A settlement can not be avoided by a party because of his ignorance of a witness who could testify to the facts upon which he seeks to set aside the settlement, where the exercise of the slightest diligence would have enabled the party to have known of such witness and the testimony he could give, prior to the making of the settlement.

### Compromise and Settlement—When can not be Avoided.

Where a compromise is made with full knowledge of the facts, free from fraud, and with knowledge of the legal rights, it can not be avoided.

APPEAL FROM FLEMMING CIRCUIT COURT.

March 18, 1874.

OPINION BY JUDGE PRYOR:

All the evidence in this case conduces to show that the appellant at no time, until after the institution of the present action, relied on the payment in full of the original one thousand dollar note. He made no such claim when it was in the hands of the attorney of the executor for collection, but did insist that a portion of the note had been paid, and a greater amount than had been allowed him in the settlement that resulted in the execution of the two five hundred dollar

notes now sought to be recovered. When these notes were executed, the original note had been due for several years, the interest thereon amounting at that time to near four hundred dollars. The settlement was made at the instance of the appellant alone, and with a full knowledge on his part, as he now maintains it had been fully paid off. He labored under no mistake of law or fact, but voluntarily executed the renewal notes, as a settlement of the claim against him.

It may be, and is doubtless true, that he was ignorant of the knowledge his relatives (who lived in a distant state) possessed in regard to it, but it is evident that there was one witness who had lived for several years with the testator, and was on intimate terms with appellant, who did know the character and value of the services rendered by the latter for his brother, and even testifies to the refusal of the old man to receive from appellant a payment on the $1,000 note when tendered, assigning as a reason that it had been, or was to be, paid in services rendered or to be rendered. This witness knew of the pasturing of the cattle, was cognizant of nearly all the business transacted by the appellant for the devisor, and fixes the value of the services at $1,000. This witness not only lived with the devisor for several years, but lived with his neighbor for fifteen years; and still it is now maintained that the appellant had no means of proving payment or the value of the services rendered.

This witness, says the counsel for the appellant, testifies "that he had been in the employ of testator for three or four years, part of the time living on testator's farm, part of the time living in his own family;" that for fifteen years he had resided more than a mile and a half from testator; that appellant had been in his employ before he was, and afterwards, until testator's death, going at every call of testator, buying stock for him, and employed in the confidential business of collecting and renewing notes of large amount. This witness also testifies that he was also present when appellant offered to pay the five hundred dollars before referred to, and the testator declined receiving it, saying, "That was not our understanding, I do not want the money. I want you to ride for me whenever I call on you." Why it was the appellant, with this sort of testimony, compromised the claim must be answered by himself.

38

It will not do for him to say that he was ignorant of what this witness would state, for if so, he is guilty of such laches as would preclude him from asking any relief in a court of equity. The defense is based on the want of knowledge, of the existence of witnesses by whom these facts could have been established; and in this particular, the answer is fatally defective, in failing to allege any effort on the part of appellant to make such discovery as might have enabled him to sustain the defense relied on. The appellant is relying, not upon any ignorance of his rights, but of his ignorance as to the existence of those who could testify to facts by which these rights could be enforced, when his own testimony discloses the name of Armstrong, who had been his, intestate's, friend, and who was entirely familiar with the origin and history of his claim. The use of the slightest diligence would have enabled appellant to have ascertained what Armstrong knew, prior to the time at which the settlement was made.

The answer is neither a counterclaim or set-off. It only seeks to avoid the payment of the two notes, by alleging that the original note for which they were executed had been paid off, and therefore the notes declared on were without consideration. In order to show how this note was paid off, the pleader gives a history of the extent and character of the services rendered, and says that by agreement these services were to be set off, or received in payment of the old note. This he must show by proof, and in addition, that he used all the diligence necessary, and was unable to discover the testimony to sustain his defense until after the two notes were given. The appellee had a complete cause of action in the notes upon which the action is based, and instead of being required to plead the compromise, it was the duty of the appellant to plead and avoid by showing that it was improperly obtained. This plea he has, in effect, made by alleging a want of consideration.

The whole character of the evidence indicates that the old man intended to give the note to the appellant, but that appellant said it was an afterthought, and we are much inclined to doubt whether the evidence upon the subject had any existence until after the action was instituted to foreclose the mortgage. The appellant has received a deduction of four hundred on the original note. The adjustment was fair and free from any fraud or duress. The appellee could then have recovered a judgment for the whole amount, and a party undertaking to avoid such a settlement, after the lapse

of several years, must show more diligence, as well as good faith on his part, than appears in this record, before the chancellor will disturb it.

In the case of Ray & Thornton v. Bank of Kentucky, 3 B. Mon. 510, the money was paid by the endorsers when they were released, under the belief that they were bound. This ignorance of law and fact entitled them to relief. In this case there is neither ignorance of law or fact, but an alleged ignorance of the witnesses by whom the facts establishing his defense could have been established when he executed the notes in controversy; and to enable him to obtain relief upon this ground, he must be held to the same character of pleading and proof, as would enable the chancellor to have vacated the judgment, if one had been rendered for the full amount of the note; and where a compromise is made under a full knowledge of the facts, free from fraud, with no ignorance of one's legal rights, we cannot well see how it is to be avoided. This note was executed in 1862, and the testator died in 1864, so that there was nothing in the way of the appellant proving his claim for services by Armstrong, as he now does, and not only such claim, but that these services were to be in discharge of the note. This he failed to do and if he has suffered by his laches, of which there is much doubt, it is his own fault.

Judgment affirmed.

*W. S. Botts, for appellant.*

*Andrews & Phister, for appellee.*