## Huffaker's Exr., et al, v. Michigan Mutual Life Insurance Company.

(Decided May 27, 1913.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

Insurance, Life—Loan Upon Policy—Mistake—Cancellation of Premium Receipt and Note.—An insurance company agreeing to lend

the insured the reserve upon his policy upon the pledge of the policy, and accepting a note pledging the policy and executing a premium receipt by mistake when all the beneficiaries of the policy had not signed the note pledging the policy, may have the premium receipt and note canceled upon discovering the mistake if no change has been made in the mean time in the status of the parties, and the offer to rescind is promptly made, the insured failing on demand to have the note signed by the beneficiaries.

HITE H. HUFFAKER, JAMES F. FAIRLEIGH for appellants.

HENRY BURNETT, BATSON & CARY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

On September 21, 1906, the Michigan Mutual Life Insurance Company issued to Joseph Huffaker of Louisville, a policy insuring his life in the sum of $10,000, in consideration of the payment of an annual premium of $683.10. The policy was in the usual form, the beneficiaries being his wife, Lily Huffaker, provided she survived him and in case she did not survive him, their three children. The annual premiums were paid on the policy on September 21, 1906, 1907, and 1908. The policy contained a provision that the company would make a loan on the policy for a period ending on the next anniversary of the insurance, and that it might then be renewed upon the payment of the premium and interest in advance on the loan for one year. The loan value as shown by the policy on September 21, 1909, was $630. Prior to September 21, 1909, the insured applied to the Louisville agent of the insurance company for a loan on the policy according to its terms. The agent notified the company of the request. In answer to this letter the company wrote the Louisville agent that it would make the loan of $630 on the policy if the fourth annual premium were paid. The letter concludes with these words:

"We will grant loan on the 21st of September of $630.00, which with cash of $90.90, will be sufficient to cover the following items:

"Premium due September 21, 1909, $683.10.

" Interest on loan for one year in advance at the rate of six per cent per annum, $37.80.

"In order to take advantage of this offer, it will be necessary for the insured to change the beneficiary from his wife and children to his wife alone unless all children have attained the age of twenty-one years.

"We enclose note to be executed by the insured and beneficiary and returned to this office accompanied by the policy named and cash of $90.90, when we will forward for delivery with the receipt for premium, which is now in your hands, a receipt covering interest on loan for one year in advance. We also enclose form for change of beneficiary peradventure the children of the insured have not attained full age."

The agent on being informed that the three children were of age accepted from the insured a check for $90.90 and a note signed by him and his wife which pledged the policy for the payment of the loan, and delivered the receipt for the premium to the insured. He forwarded the policy and note to the company who immediately wrote him as follows:

"Perhaps you did not understand our letter of the 30th ult., in which we stated that the insured would have to avail himself of the right reserved in the application to change the beneficiary to his wife if his children had not attained full age in order to pledge the policy as collateral to loan.

"If the children were not of age it would be necessary to change beneficiary, since they would not be qualified to join in execution of note. Being of age and beneficiaries under the policy, it is absolutely essential that they join in execution of note.

"We therefore return same herewith to be signed and acknowledged before a Notary Public by the children and returned to this office, accompanied by statement duly attested before a Notary Public setting forth the fact that the children joining in execution of note have attained the age of twenty-one years.

"Upon receipt of note completed as required, prompt settlement will be made through your office."

Upon receiving this letter the agent applied to the insured to correct the mistake which had been made, either by having his children to sign the note which pledged the policy or else to change the beneficiary as he had a right to do under the policy, and make his wife the sole beneficiary. This he declined to do saying that he had made no mistake and if the company or its agent had made a mistake it was its fault and not his. After trying in vain to induce him to correct the mistake, the company tendered back the $90.90, which had been paid in cash, and brought this suit to cancel the premium receipt which had been given. Proof was taken and on final sub-

mission of the case, the circuit court entered a judgment on January 15, 1912, canceling the premium receipt and adjudging that as the premium had not been paid, the insurance company should issue to the insured a paid-up policy for $920, that being the amount of paid-up insurance to which he was entitled under the statute after the payment of the three premiums in cash.   To this judgment the insured excepted and prayed an appeal which was granted.   After the granting of the appeal, the insured died, and the appeal before us is prosecuted by his executor, his wife and children.

According to the terms of the policy the loan was to be made upon the security of the policy which was to be pledged to the company to secure the payment of the loan.   The amount of the loan was the reserve upon the policy.   It was the duty of the company to maintain the reserve, and its propostion was to lend the reserve to the policy holder upon the security of the policy.   If it had lent him the reserve without some security, it would have violated its duty because it was incumbent upon it to keep the reserve on its policies securely invested for the protection of its policy holders.   In order too that the company might have a lien on the policy to secure the reserve, it was essential that the beneficiaries in the policy should consent to the pledging of the policy to the company.   The note as accepted by the agent being signed only by the insured and his wife, was not a valid pledge of the policy; for if the wife died before her husband, the proceeds of the policy would go to the three children, and they would not be affected in that event by anything that their father and mother had done in pledging the policy to the company, the children as the beneficiaries in the policy having an interest in it contingent upon their mother dying before their father. While the letter of the company of August 30 to the agent is not clearly expressed, it means that the loan would be made upon the pledge of the policy by the beneficiaries and the insured, and if the children were not of age, the insured would have to change the benefiicaries, but if the children were of age, they would have to sign the note. The agent misunderstood the letter and accepted the note apparently upon the idea that as the children were of age, the signature of the father and mother alone was sufficient; but in doing this he made a mistake, and the company having promptly declined to accept the note in this condition, it is earnestly insisted that the company was

without remedy. If in the meantime any change had oc-
curred in the status of the parties, there would be great
force in this contention, but no change had occurred. The
insured when his attention was called to the mistake did
not offer to pay the premium in money and refused to
change the beneficiaries or to do anything. If the agent
by mistake had delivered to the insured the premium re-
ceipt and accepted from him a note signed by nobody,
certainly it would hardly be maintained that the com-
pany upon promptly calling his attention to the mistake
would have been without remedy. Both the parties knew
the terms of the policy, and both understood that the
loan was to be made upon the policy being pledged as its
security. A receipt for the premium on a policy is not
different from any other receipt for the payment of
money. We have held in a long line of cases that a re-
ceipt being a mere acknowledgment of payment is sub-
ject to parole explanation or contradicton. (Knox v. Bar-
bee, 3 Bibb. 526; Hitt v. Halliday, 2 Litt. 332; Tribble v.
Oldham, 5 J. J. M., 137; Clay v. Clay, 2 Met. 548). The
pledge of the policy to the company by one of the bene-
ficiaries did not affect in any way those who
did not sign the paper. (Townsend v. Townsend,
127 Ky., 230; Meadows v. Meadows, 13 R., 494;
Voss v. Conn. Mut. Ins. Co., 44 L. R. A., 689).
It is well settled that money paid to the holder
of a check drawn without funds, may be recovered,
if paid by the drawee under a mistake of fact, unless this
will prejudice the payee who has suffered damage or
changed his situation in regard to his debtor by reason
of the laches of the bank for its failure to return the check
within a reasonable time. (Appleton v. McGilvray, 64
Am. Dec., 92; Merchants National Bank v. National Eagle
Bank, 100 Am. Dec., 120). This principle has been ap-
plied in a number of cases where money was paid by mis-
take, although the mistake was made by the person pay-
ing it. (See cases above cited and notes thereto). In
Simpson v. Montgomery, 99 Am. Dec., 228, a commis-
sioner for two states by mistake described himself in
his certificate of acknowledgment as commissioner of
deeds for the wrong state. It was held that the mistake
might be corrected in equity. We have in a number of
cases upheld the power of the chancellor to correct a mis-
take, and to place the parties in *statu quo,* where by a mis-
take of law and fact, something has been done which but
for the mistake would not have been done. (Ashbrook v.

Watkins, 3 Mon., 82; Underwood v. Brackman, 4 Dana, 313; Ray, v. Bank of Ky., 3 B. Mon., 514; Cosby v. Wicklieff, 12 B. Mon., 204; Nutall v. Nutall, 82 S. W., 377; Knuckles v. Hughes Lumber Co., 116 S. W., 1193; Dewees v. Bozarth, 140 Ky., 14).

In the above cases and those therein cited it has often been held that a deed accepted by the grantee by mistake may be reformed or cancelled where it conveyed different property from that purchased or was otherwise ineffective as a compliance with the contract of purchase. Certainly the same principle must apply to a note or other contract. If the vendor of land who had retained in the deed a lien for the purchase money should release his lien of record pursuant to an agreement that a paid-up policy should be pledged to him, would it be maintained that he would not be entitled to a cancellation of the release of the lien if it appeared that the beneficiaries in the policy had not joined in the pledging of the policy to him, although he had by mistake not discovered this until after the policy was delivered to him? How is this case to be distinguished from that supposed? The proposition to lend the reserve to the insured upon the policy as a pledge for its security, necessarily meant that there should be a valid pledge of the policy. The parties both had in mind a loan upon the policy as a pledge to secure it, and by a palpable mistake the policy was not pledged to secure the loan. When the mistake was discovered and the insured refused to correct it, no change having been made in the status of the parties, the chancellor properly corrected the mistake and the insured standing by his refusal, the court properly cancelled the policy, as the court was without power to compel him either to make the change in the beneficiaries, or to compel the children to sign the writing evidencing the pledge of the policy.

Judgment affirmed.