## Chinn's Committee v. Barnes, et al.

(Decided February 28, 1928.)

### Appeal from Christian Circuit Court.

Insane Persons.—In action instituted in behalf of person of unsound mind, evidence held insufficient to prove that assignment of such person's interest in a partnership had been procured by fraud or duress, or by threat of criminal prosecution at a time when he was mentally incapable of making the assignment.

S. Y. TRIMBLE and SAM T. FRUIT for appellant.

BREATHITT & BREATHITT for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

This equitable action was instituted by appellant, Ora Chinn, committee for Leslie Chinn, against appellees, E. P. Barnes and others, and the relief sought was a settlement of the partnership which had done business in the name of E. P. Barnes & Bro. The right to that relief was predicated upon the allegation that Leslie Chinn was a member of the partnership and owned an interest therein and had been adjudged to be of unsound mind. The defendant's answer was that, although formerly Chinn had been a member of the partnership, he had, in

December, 1923, sold out to the other members and had assigned all his interest therein unto them. By reply it was pleaded that, if such an assignment had been made, Chinn was of unsound mind at the time, and it was procured by fraud and duress. On these issues the action went to trial and the chancellor adjudged that plaintiff below, now the appellant, failed to manifest the right to the relief sought and that the petition be dismissed. The appeal is from that judgment.

A large volume of evidence was taken on the issues indicated above, and eminent counsel representing the contending parties have taken widely different views as to the conclusions that must be drawn therefrom. The partnership involved herein at the time of the transactions in question was engaged in the mercantile business in Hopkinsville, Ky., and had been so engaged from about September 1, 1920. Prior to that time for many years it had engaged in the mercantile business at Beaver Dam, Ky. While so engaged at that place and about the year 1912, Leslie Chinn was employed to drive the delivery wagon. He appears to have been industrious, to have been possessed of natural ability, and to have applied himself, and his employers appear to have appreciated his worth and services. He was promoted from time to time until in 1920, when the business was moved to Hopkinsville, he was regarded as a first-class salesman and had been given the management of the gents' furnishings department. He was the buyer for that department and had charge of its sales force. He also took an active part in that department's sales. About the time the business was moved to Hopkinsville, Chinn was permitted to become a member of the partnership, and purchased an interest in the business to the amount of $5,000. On an increase of the capital stock shortly thereafter, in distributing the surplus earnings of the firm, his holdings were increased to $5,500. He was being paid a salary of $150 per month.

Up to this point opposing counsel are in agreement. Appellant insists that thereafter all went well until in the summer and fall of 1923, when from nervousness and insomnia Leslie Chinn's mind became impaired. B. C. Barnes, in charge of the store, discovered this fact and conceived a cruel scheme to rob him of his savings, and, incidentally, of his character and his good name. To

carry out the scheme detectives were hired in December and Chinn was "framed" and charged with misappropriating the funds of the partnership. Being then of unsound mind and coerced by the "frame-up" and fear of prosecution, Chinn assigned unto the Barnes brothers his interest in the business.

Appellee insists that in 1923 B. C. Barnes, who had general charge of the business, became convinced that some one was misappropriating its funds. Detectives were employed, who utilized the store's system of keeping sales records to discover the defaulter. Each salesman was furnished a book of sales tickets. Records of each sale, whether charge or cash, were to be made in triplicate, one being sent to the cashier, one being delivered to the purchaser, and one being retained in the salesman's book. All money received for cash sales was sent with the ticket to the cashier's cage. The salesman could "knock down" when his cash customer had correct change with which to pay by failing to make a sales ticket and pocketing the money, or by making a ticket for less than the sale and pocketing the difference. Four detectives operated for a week. They made many purchases from Chinn. At night the tickets sent to the cashier's desk were checked against the purchases made by the detectives. Chinn was found to be the only salesman failing to report and account for sales, and a formidable array and per cent. of his sales were found to have been unreported and unaccounted for. The articles purchased by the detectives were kept at the Latham Hotel, and after a week of their work Chinn was asked by two of them to go to their room. He was confronted with the evidence of his unfaithfulness which he himself had made, and confessed. B. C. Barnes was called to the room and Chinn repeated the confession to him. While there Barnes presented to him a written assignment by which his interest in the business was assigned to the other members of the partnership. It was recited that it was made in consideration of $743 and other valuable considerations. The $743 paid in cash was in turn paid back to the firm by Chinn in settlement of his personal account and a note or two owing by him to it. According to the testimony of all those present, when this transaction took place no character of threat or intimidation was used to coerce Chinn into executing the assignment, nor was he induced to do so by promises that he would not be prosecuted for his

defalcations. His signing and delivery of the assignment
was freely and voluntarily done by him in settlement
of his defalcations.

Something over six months after this transaction
Leslie Chinn was adjudged to be of unsound mind, fol-
lowing the verdict of a jury to that effect in a proceeding
duly had in the Christian circuit court. Appellee's theory
is that the loss of his job, the discovery that he had been
disloyal to his employers and dishonest with their funds,
his inability to procure other employment, and his brood-
ing over these things led eventually to his mental un-
soundness.

Appellant's case is founded largely upon the premise
that the two Barnes discovered that Chinn was of un-
sound mind and "framed" him so as to defraud him out
of his interest in the business. If this foundation is un-
stable, appellant's case falls. This court's consideration
of the voluminous record and the argument of appel-
lant's able counsel does not disclose evidence tending to
establish, or any reason for concluding, that the two
Barnes possess character or lack of character consistent
with appellant's theory of the case. Nor can the record
be read so as to conclude that Chinn was "framed" by
the detectives. The weight of the evidence is that
Chinn's unsoundness of mind occurred after he assigned
his interest to the two Barnes and arose from his expo-
sure, the loss of his job, and inability to procure other
employment. These brief facts are to be deduced from
the evidence: Chinn was employed and trusted by E. P.
Barnes & Bro.; he proved unfaithful to the trust; how
long his peculations had been going on and the amount
involved cannot be ascertained; when confronted with
the evidence made by himself that his unfaithfulness had
been discovered by those who trusted him, he broke down,
and confessed, and sought to make reparation for the
wrong he had done as far as was possible. The judgment
of the chancellor that, when he did this by assigning to
the other members of the partnership his interest therein
to the amount of $5,500, he was not of unsound mind, and
was not coerced into doing so by fraud or duress, appears
to be sustained by the weight of the evidence.

The facts of this case, which are presented as suffi-
cient to establish either that the assignment was made at
a time when Leslie Chinn was of unsound mind or was
procured from him by fraud or duress upon the part of

appellee, are by no means so strong as were the facts tending to establish a like contention with reference to conveyances by Posey to Lambert-Grisham Hardware Company, in Posey v. Lambert-Grisham Hardware Co., 197 Ky. 373, 247 S. W. 30, where the judgment of the chancellor, rejecting that contention, was affirmed. Much said in that opinion might with propriety be said with reference to the situation here presented.

For these reasons, this court is constrained to the view that the judgment herein must be affirmed.