## Northcutt et ux. v. Highfill, et al.

(Decided May 11, 1928.)

(As Modified on Denial of Rehearing, September 28, 1928.)

### Appeal from Grant Circuit Court.

1. Deeds.—Threats by directors to sue bank cashier unless he executed deeds to guarantee payment of certain insurance notes, which he discounted as cashier, held insufficient to relieve cashier, where he executed deeds.

2. Compromise and Settlement.—Where controversy arose between bank directors and bank cashier regarding cashier's liability to bank because of having discounted certain insurance notes, and cashier executed deeds to guarantee payment of notes, there was consideration for execution of deeds, since an agreement of compromise is supported by sufficient consideration, where it is in settlement of claim which is unliquidated of claim which is disputed, or of claim which is doubtful.

3. Contracts.—Law does not presume that parties to contract intend by it to accomplish an illegal object, but it presumes they intend to accomplish a legal purpose.

4. Contracts.—One who refuses to perform a contract because it is illegal must carry burden of showing such illegality.

5. Contracts.—Where bank cashier was negligent in purchasing certain insurance notes, and contract was made with directors whereby cashier was to continue in employment for another year, and cashier agreed to execute deeds to directors in order to guarantee payment of notes purchased, such agreement was not void as against public policy, where there was no proof that it was agreed that cashier should continue his negligent course, and therefore presumption prevailed that contract was honestly made, with contemplation that it should be honestly kept.

6. Contracts.—Contract lawful on its face may be enforced, although the other party intended to execute it in illegal manner,

or for an illegal purpose, when such intention is unknown to party seeking to enforce it.

7.  Contracts.—Contract made in August, 1921, whereby bank directors agreed to employ bank cashier, who had been negligent in purchasing certain notes, to serve in 1922, held not void as against public policy.

ROUSE & PRICE, and O. S. HOGAN for appellants.

L. P. FRYER for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

Western M. Northcutt and his wife sought to secure the cancellation of certain deeds which they had made to J. W. Highfill and others. Highfill and others, by answer and counterclaim, alleged that these deeds were given them to secure the payment of certain sums which they set out, and they asked that they be adjudged to have liens on these lands to secure those sums. The court adjudged to Highfill and others the relief they sought, and dismissed the petition of the Northcutts, and they have appealed.

From 1904 to 1922, Western M. Northcutt was the cashier of the Farmers' Bank of Morgan, located at Morgan, in Pendleton county, Kentucky. Between 1917 and 1921 Northcutt, as such cashier, discounted for W. P. Strader a number of notes which Strader had taken for life insurance premiums. In 1921, the bank examiner discovered a number of these notes among the assets of the bank, and as a result of that discovery a controversy arose between Northcutt, on the one side, and Highfill and the other directors, upon the other, as to the solvency of this paper and the liability therefor of Northcutt to the bank. Northcutt, besides denying liability, contended the questioned paper was good, the examiner held it was bad. Both sides employed counsel, who carefully went into the matter, and this resulted in a compromise, by the terms of which Northcutt executed to Highfill and others the deeds he is seeking to cancel, and Highfill and others gave to the bank their notes for the questioned paper. Much of the paper it was thought could be collected, and by the terms of the agreement, by which the controversy then pending was settled, Northcutt was to be retained as cashier until January 1, 1923, and was to have until March 1, 1924, and, if he desired it, until March 1, 1925, in which to convert these questioned notes

into cash. Northcutt was to have control of the collection of these notes; the bank was to furnish him help therefor, which it did; Northcutt was to have credit for all paper collected or secured to the satisfaction of the bank, and on March 1, 1925, all of these notes not then collected or secured were to be assigned to Northcutt. The bank, Highfill, and the other directors did all they had agreed to do, but on January 11, 1923, Northcutt sought to get released from this agreement, and began this suit to cancel the deeds he had made pursuant to it. He pleaded that he had been threatened with suits and expensive litigation unless he executed these deeds, that he did so under duress, which was a fraud on him, and that there was no consideration for the execution of these deeds, and that his election then to serve until January 1, 1923, was against public policy, and vitiated the contract. He alleges no acts of fraud, except duress, and he alleges no acts of duress, except that suit against him was threatened. Such is not sufficient to relieve him. See Posey et al. v. Lambert-Grisham Hdw. Co., 197 Ky. 373, 247 S. W. 30.

As to consideration for the deeds the defendants in their answer and cross-action say:

> "Defendants, for further answer and defense herein, state that, prior to the execution of the contract and conveyance mentioned in plaintiff's petition, there arose a controversy between the bank and directors thereof, on the one side, and the defendant, Western M. Northcutt, on the other side, as to the latter's liability to the bank by reason of the plaintiff having discounted the notes mentioned in Exhibit A without good and sufficient surety, and a compromise thereof was effected and agreed to by the bank and directors and the plaintiff, by the terms whereof and pursuant to said compromise the plaintiff executed the contract and conveyances mentioned in the petition."

The reply of appellant does not mention this paragraph in the original answer, nor in the amended answer and counterclaim, nor does it deny a single allegation therein. The proof supports the allegations of the answer and counterclaim.

> "The rule is well settled that an agreement of compromise is supported by sufficient consideration, where it is in settlement of a claim which is unliqui-

dated, where it is in settlement of a claim which is . disputed, or where it is in settlement of a claim which is doubtful." Dexter v. Duncan, 205 Ky. 344, 265 S. W. 832.

It is stipulated that at the time of the trial there was a balance due on these notes of $15,874.98, for which sum the court adjudged Highfill and others to have liens on the property of Northcutt described in these deeds. Northcutt's effort to secure the cancellation of these deeds is based on another very ingenious contention in his brief, which is that the giving of these liens by him and his wife to guarantee the payment of these insurance notes and the other notes mentioned in the schedule, which was attached to the contract, is void as against public policy. He contends now in his brief that, if he was negligent in making these loans, or in purchasing these notes, the directors knew that when they contracted to continue his employment, and that hence they contemplated he would so continue, and this entire contract is, so he contends in his brief, for that reason, against public policy and void. He does not anywhere allege that it was agreed he should continue his negligent course; there is not a line of proof to that effect, and, in the absence of such, the presumption must prevail that this contract was honestly made, with the contemplation that it should be honestly kept, and that Northcutt should honestly discharge the duties incumbent on him as cashier. To hold otherwise would mean that a man who had once wandered from the path of rectitude could never face about and amend his life, a doctrine to which we cannot subscribe.

"The law does not presume that parties to a contract intend by it to accomplish an illegal object, but it rather presumes they intend to accomplish a legal purpose." Elliott on Contracts, sec. 1065.

"One who refuses to perform a contract because it is illegal must carry the burden of showing such illegality; merely to create confusion and suggest doubts is not enough." Illinois Surety Co. v. O'Brien (C. C. A.) 223 F. 933.

What must be proven should be supported by pleading, and having failed in his pleading, as well as his proof, to show or claim this agreement was corruptly made, Northcutt must lose. If he intended to act corruptly in the discharge of his duties as cashier, that does

not vitiate this contract, unless the other directors of the bank knew he so intended, and consented to his employment with the knowledge of that intention.

"Contract lawful on its face may be enforced, although the other party intended to execute it in an illegal manner or for an illegal purpose, when such intention is unknown to the party seeking to enforce it." Holtzman v. Israel, 194 Ill. App. 474.

"That a party to a contract capable of performance in a legal manner intended to perform it in an illegal manner will not preclude its enforcement." Hogston v. Bell, 185 Ind. 536, 112 N. E. 883.

See, also, 6 R. C. L. p. 695, sec. 101.

The pleadings filed by Northcutt do not disclose the faintest suspicion that he had corrupt intentions. Courts have never hesitated to deny relief sought under terms of a corrupt contract, when such corruption was made to appear by pleading and proof, or even without such when it was patent in the face of the contract; but it is a doctrine to be carefully applied, for it may easily lead us far afield.

In Richardson v. Mellish, 2 Bing. 229, Justice Burroughs said:

"Public policy is a very unruly horse, and, when once you get astride it, you never know where it will carry you."

In Printing Co. v. Sampson, 19 Eq. Cas. 462, Sir George Jessel said:

"If . . . there is one thing more than any other which public policy requires, it is that men of full age and competent understanding, shall have the utmost liberty of contracting, and that contracts, when entered into freely and voluntarily, shall be held good and shall be enforced by courts of justice."

This was quoted with approval in Diamond Match Co. v. Roeber, 106 N. Y. 482, 13 N. E. 422, 60 Am. Rep. 464. Although Northcutt makes in his brief the arguments upon question of public policy which we have stated, yet the only attempt he makes in his pleading to show this contract is against public policy is founded on the allegation that in August, 1921, the directors em-

ployed him for the year 1922.  Here are the very words of his petition:

> "*He says the agreement to elect him cashier for the succeeding year, entered into as a part of said contract, long before the legal date for said election, was contrary to public policy, wrongful, and void.*"

The directors knew in August, 1921, they would need some one as cashier to serve in 1922, and we know of nothing to prevent the election of a cashier then to serve in 1922.  We hardly think authority can be found holding that the board must wait until the year 1922 arrives before selecting such an officer; indeed, it would have been unwise for these directors to wait until the year 1922 was at hand before looking about for some one to serve the corporation in that capacity.  It would be highly improbable that they could wait until January 1, 1922, then meet early in the morning, and succeed in employing a suitable man, ready to walk right in, hang up his hat and coat, and open the bank on time.

The judgment is affirmed.