# Provident Life & Accident Insurance Co. of Chattanooga, Tenn., v. Ramsey.

(Decided Nov. 2, 1934.)

127

BRUCE & BULLITT, WM. MARSHALL BULLITT, WM. B. LOCKHART, EUGENE B. COCHRAN, TYE, SILER, GILLIS & SILER and CHARLES J. WHITE for appellant.

H. H. OWENS and T. B. CULTON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

In 1925, the National Life & Accident Insurance Company of Nashville, Tenn., issued its accident and sick benefits policy to the appellee, John Ramsey. The initial sum was $2,000. It was kept in force by the payment of the premiums until after the happenings in 1930 hereinafter referred to, and upon which this action is based. In the meantime, the obligations of the policy were assumed through a reinsurance transaction by the

appellant and defendant below, the Provident Life & Accident Insurance Company, etc., whereby it became the insurer in the policy. In addition to an agreement to pay the initial sum in case of the accidental death of the insured, the policy provided for both sick and accident benefits, the first of which obligated the insurer to pay to the insured $60 per month for twelve months, on the terms stated in the policy, for total disability resulting from sickness while the policy was in force, and which we will hereinafter refer to as obligation (a). It also provided for the payment of accident benefits to the insured if he was not killed but totally disabled from performing any part of his occupation by reason of the described accidental means set forth in the policy, and which payments were to continue for two years after the disability arose, if it continued that long, but at which time the insurer could terminate all liability under the policy by paying to the insured twenty times the amount of the monthly payment, which would have been a total sum of $1,200 in this case, the monthly payments being $60, and which will hereinafter be referred to as obligation (b).

In March, 1930, the insured (to whom we will hereinafter refer as plaintiff) became afflicted with what he and his physician stated in his application for benefits under obligation (a) was "a sort of paralysis." He manifested in his application that he was totally disabled by reason thereof, and he sought the payment of sick benefits as provided in that obligation. His application was approved, and the monthly sick indemnity benefits were paid to him for six months. Prior thereto plaintiff applied to the local agent of the insurer (to whom we will refer as defendant) for a lump sum settlement of all the obligations that were due him from defendant under the policy. The local agent informed him that he (agent) possessed no authority to make such a settlement, but informed plaintiff that it could be done by the proper officer at the home office in Chattanooga, Tenn., whose name was Webb. Whereupon plaintiff agreed to pay all of the expenses of the agent if he would carry plaintiff to Chattanooga with the view of making such a settlement. The trip was made, but, before reaching the home office, plaintiff told the agent that he thought he was entitled to the sum of $500 in full compromise and settlement of all obligations under the policy, in addition to what had been paid him in monthly install-

ments. After meeting Mr. Webb and conversing with him, an agreement was reached whereby defendant paid to plaintiff, pursuant to his agreement to accept it, the sum of $450, which was made by check, and he indorsed it and obtained the cash thereon. At the same time he executed receipts acknowledging the payment, and that it was in full settlement of all of his rights under the policy, and he also signed a writing cancelling it and delivered it, with its cancellation, to the defendant, and all of which occurred on or about September 30, 1930.

Slightly more than a year thereafter, and on October 6, 1931, this court rendered its opinion in the case of Woods v. this same appellant, reported in 240 Ky. 398, 42 S. W. (2d) 499, in which it was held that paralysis produced by drinking and consuming fluid extracts of Jamaica ginger of the variety commonly known as ''Jake,'' when the consumer at the time was unaware of such probable effect, should be classified as an accident, for the consequences of which obligation (b), supra, indemnified against. Plaintiff was well satisfied with his settlement, and made no complaint of it whatever until after the Woods opinion became final, and then he made efforts to procure the setting aside of the compromise settlement and to assert his rights under obligation (b), supra, upon the ground that his paralysis was produced in the same manner as set out in the Woods opinion, and for the reason therein stated his affliction was accidentally produced so as to entitle him to the benefits of that obligation of the policy instead of being confined to obligation (a) thereof.

Being unable to accomplish that result by agreement, he filed this equity action in the Knox circuit court against defendant on May 11, 1932, and in his petition, after setting forth his policy, his disability, and the settlement referred to, he attempted therein to rescind and repudiate the latter by averring that ''at said time the plaintiff was physically and mentally unable to take care of himself. He had no lawyer or person present to assist him in taking care of his rights. He had no business experience. He had been a laborer for the railroad company at Corbin, Kentucky, for many years. He had a family and they were practically on sufferance. The said Webb represented to plaintiff at said time and place that his doctors had given assurance that within sixty days there would be a permanent cure for the condition with which plaintiff was suffering and

he would be restored to full health again. Plaintff relied upon said statements and representations and there and then signed a release and surrendered his policy, believing that he was suffering with sickness and not from an accident and believing the representations of said Webb that he could be permanently cured within sixty days and at a time when he was in distressing need of said funds for the support of himself and his family. Altogether he was paid under said policy the sum of $790.00, and no more—six monthly payments of sixty dollars each and $430.00 at the end of said six months period at the time when he surrendered the policy and executed a release against the provisions thereof. Plaintiff believed, in good faith that he was suffering from sickness and not from accident and he verily believes and charges that the defendant in good faith so believed and through mutual mistake the said writing was executed, the said settlement made and policy surrendered. If that is not true as to the defendant, it is true as to the plaintiff and the defendant through fraud, covin, deceit, misrepresentation and overreaching procured plaintiff to sign said settlement and surrender his said policy."

He prayed for a rescission and cancellation of the settlement, because of the alleged fraud and mistake, and that he be decreed the right to all of the benefits of obligation (b) in the policy, and for judgment accordingly. The demurrer of defendant filed to the petition was overruled, and by answer it denied the material averments of the petition with reference to the fraud and mistake averred therein, and in another paragraph pleaded the settlement made between it and plaintiff in bar of the action. Following pleadings made the issues, and upon submission after evidence taken, the court (it being an equity action) sustained the prayer of the petition by setting aside and canceling the settlement, and rendered judgment in accordance with plaintiff's prayer, to reverse which defendant prosecutes this appeal.

Defendant's counsel in their briefs argue a number of grounds for a reversal of the judgment, and the record presents one which we regard as material, but which we do not find referred to in the many points discussed by them. It is, that plaintiff, before filing his action, did not tender to defendant the $450 it paid him in the compromise settlement, nor did he offer to do so, nor was such an offer made at any time during the

pendency of the cause. In the case of Kentucky Central Life and Accident Insurance Company v. Burrs, 256 Ky. 64, 75 S. W. (2d) 744 (decided October 30, 1934), the question of the necessity of such a tender, or offer to do so, in an action seeking a rescission or cancellation of an executed settlement of the identical nature of the one involved here, was extensively discussed, and practically all prior domestic cases in which it was involved that have been before this court are collated. Under the facts there presented, which cannot be differentiated from those in this record, we held that the one seeking the rescission could not obtain it without such precedent tender or offer to do so, so as to place his adversary in status quo. The circumstances under which that rule of practice is mandatorily required are clearly set forth in that opinion, and it will not be necessary to repeat them in this one, except to say that the same doubts surrounding the compromised claim as affecting the ultimate amount of it, or any actual one at all, so as to afford a consideration for the compromise, appeared in that as well as this case, and we regard that opinion as fatal to the plaintiff's cause of action herein. It was relied on by defendant in the general demurrer filed to plaintiff's petition wherein it pointed out the grounds therefor, one of which was that "because no tender back of the money has been made, or alleged in the petition." However, inasmuch as that defense is not pressed in briefs, we will pass it without further discussion and take up for consideration the chief grounds to which the major part of briefs is devoted, and which are: The failure of any proof or fraud entering into the making of the compromise, and that the alleged mistake of law, if true, is not one entitling plaintiff to the relief that the judgment gave him.

The pleadings made an issue upon the question of fraud in the procuring of the compromise settlement; but the only pretended fraudulent fact alleged or testified to in support of this charge was that Mr. Webb, the general agent who effected the compromise for defendant, told plaintiff at some time during that meeting that he had seen or that there was a recently discovered remedy for Jake paralysis with which plaintiff had informed the agent he was suffering. Mr. Sullivan, the local agent of defendant at Corbin, Ky., and the loyal friend of plaintiff, was present at the time, and both he and Webb denied any such statement by the latter.

Moreover, the undisputed circumstances in the case, without considering the denial by Sullivan and Webb, refute the idea that, if such a statement had been made, it was the inducing cause for plaintiff making the compromise. He first suggested the subject long before the trip to Chattanooga, and, as time passed, his anxiety to make it increased until he agreed to pay the entire expenses of the trip if the agent would take him to that city. The fact that before meeting Webb plaintiff fixed the amount that he agreed to accept in compromise of defendant's liability under the policy (and which was $500) is sufficient in itself to show that the alleged statement attributed to Mr. Webb was of little or no weight, since plaintiff's first proposed compromise amount was reduced only $50. We do not appraise the testimony in the record as establishing the alleged fraud entering into the compromise agreement. But, if the statement of Webb, upon which it is based, had been proven, we then conclude that its effect in bringing about the compromise was negligible or entirely wanting, even if plaintiff was suffering with Jake paralysis so as to bring his case within the doctrine of the Woods Case, supra, but which fact is most meagerly and loosely testified to.

It should also be remembered that plaintiff was highly gratified at his compromise settlement, and so expressed himself to numbers of his friends and acquaintances until he learned of the Woods opinion more than a year after it was made, and then for the first time it occurred to him that he was fraudulently induced to make it. Such circumstances, in the light of well-known characteristics of human nature, are elucidating and cannot be ignored. On receiving the information furnishing the moving cause of this litigation, plaintiff immediately repaired to the office of the same attorney who represented appellant in the Woods Case, and from him he no doubt obtained the facts from which sprouted the fraud and mistake upon which this action was erected, and it would be in utter disregard of the rules for weighing testimony to hold that the alleged fraud upon which this executed contract was made was sufficiently proven so as to entitle plaintiff to the relief granted him by the trial court, since it is the undeviating rule that executed contracts based upon sufficient consideration will not be canceled or rescinded except upon the clearest and most convincing proof. 9 C. J. 1254, sec. 195;

Perry v. Thomas, 232 Ky. 781, 24 S. W. (2d) 603; Cole v. Young, 167 Ky. 600, 181 S. W. 177; Ferguson v. Akers, 165 Ky. 289, 176 S. W. 1149; Culton v. Asher, 149 Ky. 659, 149 S. W. 946; Salyer v. Salyer, 141 Ky. 648, 654, 133 S. W. 556; Kennedy v. Fulton Mercantile Co., 108 S. W. 948, 33 Ky. Law Rep. 60; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 104 S. W. 758, 31 Ky. Law Rep. 1130, 12 L. R. A. (N. S.) 427; Matthey v. Wood, 12 Bush, 293; Davis & Co. v. Starks' Ex'r, 6 Ky. Law Rep. 442, 12 Ky. Op. 703. Other domestic cases cited later on in this opinion adhere to the same rule.

The executed compromise settlement in this case which plaintiff seeks to rescind was supported by a sufficient legal consideration so as to call for the application of the rule of evidence just stated. The claim of plaintiff against defendant growing out of the obligations of the policy was at the time of the compromise doubtful both as to its amount and its duration, and which was and is true with reference to both of the obligations (a) and (b) supra. It was doubtful as to whether the disability of plaintiff was total and also as to whether it was permanent. The same may be said as to the probability of plaintiff's permanent or partial recovery from his affliction, all of which involved questions affecting the amount as well as duration of payments by defendant in discharge of its policy obligations. The claim was also unliquidated in the sense that no one knew what would be the ultimate total sum that plaintiff might be entitled to collect from defendant because of the uncertainty of future developments directly bearing thereon. In the cases of Posey v. Lambert-Grisham Hardware Co., 197 Ky. 373, 247 S. W. 30, 33; Dexter v. Duncan, Guardian, 205 Ky. 344, 265 S. W. 832, and other domestic ones cited in those opinions, the well-settled rule for measuring a sufficient consideration for a compromise agreement was stated and approved, and which is in these words: "An agreement of compromise is supported by a sufficient consideration, where it is in settlement of a claim which is unliquidated, where it is in settlement of a claim which is disputed, or where it is in settlement of a claim which is doubtful." Perhaps no opinion nor text authority could be found in conflict with that general statement of the rule. Therefore, since all of those elements existed in this case, as we have seen, there can be no doubt of the sufficiency of the consideration paid plaintiff by defendant to support

the attacked compromise agreement, and which leaves for our disposition the only remaining question; i. e., the alleged mistake of law, and upon which counsel for plaintiff most implicitly rely.

Some of the latest cases from this court dealing with the question as to when equity will grant relief against purely a mutual mistake of law are Chase v. Weinberg, 249 Ky. 518, 60 S. W. (2d) 1000, 1004; Johnson v. Baker, 246 Ky. 604, 55 S. W. (2d) 404; and Brashears v. Combs, 174 Ky. 344, 192 S. W. 482. Many other prior ones are cited in those opinions, and there is complete unanimity in all of them; their holding being also in accord with other courts and text-writers. That the alleged mistake in this case is purely one of law and not of fact is indisputably established and practically admitted. Plaintiff knew about his drinking of two-thirds of a vial of Jake about eighteen days before he was stricken. The fact was imparted to defendant before the compromise was effected which is evidenced by plaintiff's charge of fraud which we have already disposed of. At that time it had never been declared by this court, nor, perhaps, by any other one, that a diseased condition brought about by the consumption of "Jake" was the result of and produced by accidental means within an accident policy clause smilar to the one under consideration. Therefore neither party to the compromise settlement knew what would be the ultimate declaration of this court upon such facts. It presented a question shrouded in doubt similar to that arising from ambiguous language in contracts, deeds, and wills upon the proper interpretation of which valuable rights of interested parties would depend. The situation, therefore, brought this case to an exact parallel with the situation in the Chase Case, supra; the facts of each being almost exactly analogous.

In that case, as well as is true in this one, the facts were known to both of the contracting parties, but they were neither aware of what might ultimately be the determination of the court upon them. The relief prayed for in that case, which was the same that plaintiff is demanding here, was denied by us in an opinion wherein we reviewed the Brashears and Baker Cases, supra, and others from this court, as well as some recognized text-writers on the subject wherein the rule as to when relief will be granted for a pure mistake of law and when it will not is distinctly stated. Our ultimate conclusion

after such review was thus stated: "Applying that rule to the facts of this case, we find that no one misunderstood any language in the deed sought to be canceled, nor was any one mistaken as to its legal effect. The only issue about which there was any doubt whatever arose out of the question of, whether or not restriction No. 3, supra, had been waived and abandoned, and the solution of that issue depended entirely upon the extent and kind of violations of it by owners of the various lots of the subdivision. All parties were fully aware of the facts upon which its solution depended. The situation involved the taking of a chance, and whether or not that would be done was left to the determination of selected counsel, learned in the law, to whom both parties correctly stated the relevant facts, and it was upon his judgment that they both relied and completed the transaction. By defendants not objecting to his selection it might not be inappropriate to say that each party made him their arbiter and agreed to abide by his conclusion. To now hold that one of them may, under such circumstances, disregard his contract would encourage a party to a doubtful venture, to disregard his deliberate purpose and intention to enter into the exact contract that he made, and, if the speculative chance, about which he was fully aware, should turn out against him, to then relieve himself of all burdens of his contract and take from the other party the benefits of his bargain."

It is true that there does not appear any consultation of counsel in this case as was done in that case, but that reason for the conclusion reached therein was not decisive but only an additional fact supporting our ultimate conclusion, which in effect was that equity will not grant relief against a pure mistake of law when the contract against which relief is sought was supported by a legal consideration and was not superinduced by fraud, concealment, or other vitiating considerations, and where the parties were fully cognizant of the facts. However, it was also recognized therein, as well as in other cases therein cited, that: "Where one parts with property or incurs obligations under the mistaken belief that he was under a legal obligation to do so when there was no law furnishing a foundation for such obligation, he may, generally speaking, be relieved against the mistake upon appropriate and timely application therefor." In other words, relief will be granted against

a pure mistake of law when the one seeking it was motivated by the mistaken belief that he was under a legal obligation to do that which he agreed to, when in fact there was no such obligatory law. See, also, Underwood v. Brockman, 4 Dana, 309, on page 318, 29 Am. Dec. 407; Ray & Thornton v. Bank of Kentucky, 3 B. Mon. 510, 39 Am. Dec. 479; and First National Bank v. Ford & Brothers, 10 Ky. Op. 251. Those and other opinions hold that "a mistake of law will not relieve one against his contract founded upon a valuable consideration," and which we interpret to mean that when the mistake is one of law only, and unaffected by any of the considerations we have mentioned.

An illustrating case arises when, on account of the mistake of law, the complaining party was induced to surrender, without consideration, a benefit to which he was in law entitled, an example of which is found in the case of Horn v. Atlas Assurance Soc., 241 Ky. 226, 43 S. W. (2d) 675. There the insured in a fire policy upon a building compromised and settled his loss for a less sum than the amount of insurance named in the policy and which was contrary to our statute commonly known as "The Valued Policy Clause Act." (Ky. Stats. sec. 762a22). We had construed that statute as mandatory upon the parties and as compelling the insurer to pay the stipulated amount, unless fraud had been practiced by the insured or the property had become depreciated after the policy was issued and before its destruction. Neither of those avoidances appeared in the Horn Case and the compromise amounted to only a voluntary reduction of a liquidated amount which was due and its surrender was without consideration. The consequence of applying a different rule was thus stated by us in the Chase opinion:

"Some illustrations will serve, as we think, to demonstrate the fallacy of plaintiffs' contention. If they are correct, and are entitled to the relief that they ask in this case, then any one purchasing property, the title to which was clouded and of which, and all the facts concerning which, he was aware, would likewise be entitled to relief if it should subsequently develop that he was mistaken in his judgment as to the legal effect of the facts; or one might purchase real property then occupied by a stranger to the deed, and the purchaser possessed knowledge of all the facts concerning such occupancy but determined that it was amicable and not

adverse to the title of his vendor, and so believing he takes the chance and makes his purchase, but afterwards it is determined that the occupancy of the stranger was adverse to the title of the vendor and the deed obtained was worthless, either because it was champertous or because the occupant had acquired the title by adverse possession.

"Again, one might purchase the interest of a devisee under a will believing that its language created an absolute title in the devisee [his vendor], but before doing so and to relieve his doubts he seeks and obtains the advice of learned counsel of his own choosing and makes the purchase, followed by eventual loss because of incorrect advice. If the contention of plaintiffs in the instant case is sustainable, then in each of the illustrated ones the disappointed obligee or contractor would be entitled to relief. But, surely the ancient rule denying relief for mistakes of law has not yet become sufficiently relaxed as to embrace such illustrative classes of cases, and other similar ones of common and universal occurrence. They, like the conveyance under consideration, are but chance bargains entered into with full and complete knowledge of the facts but which later proved disastrous to the disappointed bargainor, and for which the law furnishes no remedy in the absence of some misleading or fraudulent conduct of the other contractor."

This court 126 years ago in the case of Taylor v. Patrick, 1 Bibb, 168, said that: "The compromise of a doubtful right is a good consideration to found a contract on; and it is immaterial on whose side the right ultimately turns out to be, as it must be on one side or the other." The compromise there attacked involved the legal effect of a certain patent entry concerning which there existed doubt. Some years after the compromise was executed, one of the parties attempted to obtain relief against it, partially at least because he was mistaken as to the law touching the compromised matter, but the court refused the relief, and in the course of its opinion said: "Whether the entry itself is valid, may depend on testimony; and whether it would cover the land in controversy, depends on a proper construction of it; it might or it might not, for any thing that appears to the court; and if the court were to travel into the investigation of the relative merits of the two

claims, it would be doing the very thing the parties intended to avoid; and it would be setting a precedent that would unsettle a great part, if not all the compromises that have taken place.''

Three years later the case of Fisher v. May's Heirs, 2 Bibb, 448, 5 Am. Dec. 626, came before the court, wherein a similar question was involved, and it was decided adversely to the one seeking the cancellation of the compromise settlement involving a mistake of law. In the course of the opinion upholding the compromise the court said: ''There can be but one superior and equitable right. If therefore the solemn compromise of the parties about property of doubtful title, is made to depend on the question whether the parties have so settled the dispute as the law would have done, then it may be truly said that a compromise is an unavailing, idle act, which questions even the power of the parties to bind themselves. * * * In this case, the existence and locations of both claims must be presumed to have been known to both parties, not only because they were of record, but because the contract is predicated on that knowledge. And whether one or the other party understood the law of the case more correctly than the other, cannot be material to the validity of the bargain. For if it were, then it would follow that contracts by the parties, settling their own disputes, would at last be made to stand or fall, according to the opinion of the appellate court how the law would have determined it.''

The soundness of those declarations has never been questioned, and we followed them in the Chase opinion, although those more or less ancient cases were not therein referred to. This and all other courts have steadfastly declared that compromises of doubtful claims and controversies are favored by the law, and, when free from any corrupting and vitiating vices, they should be upheld in every case where there was a supporting consideration, and also that the grounds relied on for attacking them should be established by clear and most convincing proof.

This record presents no case calling for court interference, as we have endeavored to point out, and for which reason the judgment is reversed, with directions to set it aside and enter one dismissing the petition.

Whole court sitting.