## Mutual Benefit Health & Accident Association of Omaha, Neb., v. Kidd.

(Decided May 10, 1935.)

O. H. POLLARD and R. L. POLLARD for appellant.

WILLIAMS & ALLEN and LEEBERN ALLEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, Harrison Kidd, had a son, Thomas Kidd, who at the time of his death on June 28, 1930, was about 23 years of age. Prior to his death (which occurred in the manner hereinafter stated), two policies were taken out on the life of Thomas Kidd in each of which plaintiff was the beneficiary. One of them was a combined life and accident policy and was issued by the New York Life Insurance Company, in which it agreed to pay plaintiff the beneficiary therein $1,000 upon the death of the insured, Thomas Kidd; but if his death was produced by accident, as described in the policy, the indemnity would be doubled, entitling the beneficiary to receive $2,000. The other policy was issued by appellant and defendant below, Mutual Benefit Health & Accident Association of Omaha, Neb., and it indemnified against accidental injuries only and by which defendant agreed to pay plaintiff as the beneficiary the sum of $2,000 if the insured met his death by accident, as described therein. In the written application for it the insured was asked what was his occupation, and he answered: "Carrying-mail," when in truth and in fact (which the record shows with-

out contradiction) he pursued that occupation only in the forenoon, and in the afternoons he engaged in logging timber in the woods, which required the use of a mule team and other facilities required in moving saw-logs to their destination.

The undisputed proof in the case showed that in the early afternoon of June 28, 1930, after having carried the mail in the forenoon of that day, the insured went to the woods with a team of mules to perform his afternoon labor in the logging and timber business of his employer, who was also the local agent of defendant. He did not return at the usual hour, and his failure to do so created uneasiness on the part of his friends and relatives, some of whom, including his brother, Charlie Kidd, went to the forest where the insured worked, and what they discovered is thus told by the brother:

"Q. Where did you find him? A. Back on the ridge in the woods where he was due to be hauling logs.

"Q. Who was with you? A. Bedford Bowman and Orville Cochran.

"Q. What was your brother doing at the time he lost his life? A. Well he was due to be logging.

"Q. Anybody helping him? A. No, I reckon not.

"Q. What kind of team was he usin? A. A pair of mules.

"Q. When you found your brother you say he was out in the woods? A. Yes on the top of the ridge.

"Q. Did you notice any hurts or bruises or wounds? A. Yes, a big crushed place in the back of his head and a round hole in the back of his head.

"Q. Where was the team? A. Out to the left, thirty yards I guess.

"Q. Did you notice their condition? A. Yes their harness was twisted and the check lines were wound up under their feet.

"Q. The harness was torn and twisted? A. Yes sir.

"Q. What time of day did you find him? A. About nine o'clock at night.

That description (which is the only one contained in the record), as will be seen, is most indefinite, and leaves it extremely doubtful and speculative as to the way and manner the death of the insured was produced. At most, it only creates a plausible probability that he may have been kicked by one of the mules he was using, since his death in the manner it occurred could be accounted for upon no other reasonable hypothesis consistent with its being accidental. At any rate, defendant, because of such fact, and because of the further one that the insured failed to give the logging business as a part of his occupation in the answer to the question concerning it in his application, disputed its liability under its policy which plaintiff seems not to have known of at the time of the death of his son. However, with the view of settling the issue, and to obtain a complete quietus, E. V. Cox, an adjuster for defendant, wrote plaintiff a few days before July 25, 1930, to meet him (Cox) at the Jefferson hotel in Jackson, Ky., on a specified date, which appointment the adjuster kept, but plaintiff failed to appear. The adjuster then sought out plaintiff, who produced the policy in the New York Life Insurance Company, when Cox informed him that he did not represent that company, and that he had no authority to negotiate a settlement for it, informing plaintiff at the time that the policy that he (Cox) was proposing to settle was one for $2,000 issued by defendant.

The negotiations resulted in a settlement of the claim for the consideration of $500, which was then and there paid by check issued to plaintiff, which he later collected and appropriated the proceeds to his use. That settlement was made on July 25, 1930, and the check, together with an acknowledged receipt, shows that it was done in full settlement of defendant's liability under its policy, and which Cox on the trial of this case testified was in the neighborhood of what he estimated would be the cost of a litigation, including attorney's fees, and which amount he agreed to pay in order to dispense with the trouble and expense of a lawsuit.

On November 11, 1930, plaintiff filed this ordinary action against defendant in the Breathitt circuit court, seeking to recover from it $1,500, the balance of the face of the policy, upon the ground that fraud was practiced on him in procuring the settlement referred to,

and which he averred consisted in (a) Cox, the adjuster for defendant, falsely representing to him that he was settling the policy of the New York Life Insurance Company on his son's life, and that he (plaintiff) did not know otherwise until some time later when the New York Life Insurance Company paid him the full amount of its policy, and (b), that Cox falsely represented to him that defendant was not liable, when in truth it was liable, and which plaintiff says was a fraud practiced upon his rights. He did not return to defendant, or offer to return to it, the compromise amount of $500, but, notwithstanding, the court overruled defendant's demurrer to the petition.

In its answer, defendant first denied the material averments of the petition, except the issuance of the policy sued on, and in other paragraphs it relied (2) on the false answer supra made by the insured in his application for the policy, and (3), the compromise of the claim before the filing of the action by the payment to plaintiff of the sum of $500 which he accepted and appropriated and which, as stated, he had never returned or offered to return to it. Those defenses were denied and upon trial, the jury, under the instructions of the court, returned a verdict for plaintiff for the full amount sued for, and, from the judgment based thereon, defendant prosecutes this appeal.

The testimony in the case shows, perhaps, a waiver of defense (2) or an estoppel of defendant to rely on it because of its agent being present when the application was made out, and he, possessing knowledge of the facts as to insured's occupation, made no objection to the answer, and which would possibly excuse the false answer under numerous opinions of this court, among the latest of which is Berkshire Life Insurance Co. v. Goldstein, 259 Ky. 451, 82 S. W. (2d) 501 (decided April 26, 1935) and others referred to therein. But no such waiver or estoppel was relied on in any pleading of plaintiff. However, if it were otherwise, and if he had both pleaded and established the waiver or estoppel to rely on that defense, or that reason for disputing liability by defendant, there yet remained the very much mooted question of whether or not the insured received his death as a result of the accidental means covered by the policy, and insured against. If the latter issue had not existed, and if the one based on the false answer

in the application was also eliminated by waiver, estoppel, or otherwise, then the compromise of the claim would be nothing but an effort on the part of defendant to relieve itself of a liquidated liability by the payment of a less sum; and, under numerous opinions of this and other courts, the settlement could not be sustained because unsupported by a legal consideration. See Creutz v. Heil, 89 Ky. 429, 12 S. W. 926, 11 Ky. Law Rep. 652; Inter-Southern Life Insurance Co. v. Stephenson, 246 Ky. 694, 56 S. W. (2d) 332.

On the other hand, if the liability contended for is doubtful, and the doubt is supported by reasonably well-founded grounds, a compromise or settlement of it for a less sum than what would be due if no such doubt existed is not embraced within the rule above referred to, but will be upheld as having been made upon a valid and sufficient consideration. The latest case from this court so declaring is Provident Life & Accident Insurance Company of Chattanooga, Tennessee, v. Ramsey, 256 Ky. 126, 75 S. W. (2d) 781, and others referred to therein. That case with the other late one of Kentucky Central Life & Accident Insurance Co. v. Burrs, 256 Ky. 64, 75 S. W. (2d) 744 (and the ones referred to in it) are also authority for the principle that one seeking a rescission of an executed compromise agreement, and a recovery for the full amount of the compromised claim, must tender (or excuse the tendering) the amount received in compromise as a condition precedent to the maintenance of his action for a rescission, unless the compromise agreement was without consideration because in settlement of a larger liquidated and undisputed amount, or, if disputed, it was based upon wholly insufficient grounds.

In this case, plaintiff did not support his alleged ground of fraud as made in his pleading, since on cross-examination he expressly admitted that the witness, Cox, informed him of the existence of the policy issued by defendant, and that he (Cox) was negotiating for a settlement of that claim, and that he was expressly informed by Cox that the latter had no connection with the New York Life Insurance policy and was making no effort to settle or compromise it. He also admitted that Cox informed him at the time of the two defenses (1) and (2), supra, which the defendant claimed excused it from liability. With that knowledge he agreed

to and did accept the payment made in compromise and which, as we have seen is and was, under the facts, supported by a valid consideration, and justified the payment and acceptance of the compromise amount in full settlement of the entire claim which defendant disputed upon justifiable grounds. Furthermore, plaintiff, as we have seen, failed to establish the only fraud upon which he relied; but if he had testified otherwise, then he failed to return or offer to return the compromise amount, which the Ramsey, Burrs, and other cases, supra, require as a condition precedent to the maintenance of the action, and which failure defendant expressly pleaded and relied on.

Complaint is made of the instructions given by the court, at least some of which we conclude are justifiable, but inasmuch as the court should have directed a verdict for defendant, for the reasons hereinbefore stated, none of the other grounds will be referred to, discussed, or determined.

Wherefore, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.