## Ferguson v. Akers.

(Decided June 8, 1915.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Contracts—Evidence to Overthrow Written Contract Must Be Clear and Convincing.—Where a party, who seeks to avoid a written contract, has the contract in his possession and has ample time and opportunity to read and understand its provisions, he cannot have it set aside on the ground that his signature was procured by fraud or mistake, unless the evidence to this effect is clear and convincing.

W. G. DEARING for appellant.

WM. W. CRAWFORD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On June 4, 1909, the appellant, Ferguson, submitted to the appellee, Akers, the following proposition in writing:

"I hereby propose to sell to you 346½ shares of the Common Stock of the Louisville Soap Company for the sum of $27,500; provided you make payment at the present time of $500, which payment, in the event that this proposition should be accepted, is to be applied as part of the purchase price; but, in the event that this proposition is not accepted, the said sum of $500 is to be the consideration for the making of this proposition and leaving open of the same until Monday, June 7, 1909, at six o'clock p. m.

"As a further consideration to you for making the purchase of the stock aforesaid, I hereby agree to release and do hereby release all the reversionary rights which I have in and to the said Common Stock of the Louisville Soap Company, now held in trust by the Fidelity Trust Company, subject to the terms of a certain agreement between myself and others and you, dated August 12, 1908, so that you, on the consummation of the purchase herein provided for, will become the absolute owner of all of the said stock in the hands of the Fidelity Trust Company which could or would revert to me if the conditions of said contract were not complied with; it being distinctly understood, however, that nothing herein contained shall affect the rights of the holders of the Preferred Stock of the Louisville Soap Company, and that the provisions concerning the non-payment of dividends on the Common Stock of said Company, as recited in said contract, are not to be affected by this contract, and no dividends shall be paid on said Common Stock, except as provided in said contract."

This proposition was accepted by Akers, and the 346½ shares of stock mentioned in the first paragraph, as well as the stock mentioned in the second paragraph, which consisted of 448½ shares, was delivered to Ferguson by the Fidelity Trust Company, in whose possession all of this stock was.

In August, 1913, Ferguson brought this suit in equity against Akers to recover the possession of the 448½ shares of stock, upon the ground that so much of the proposition heretofore set out as released to Akers all the interest Ferguson had in the 448½ shares was a mistake. That he did not propose to sell his interest in this stock and did not know that the proposition contained any agreement that it should be transferred to

Akers. He further set up that he signed the agreement without reading the second paragraph thereof, and that Akers well knew that it was not contemplated or agreed to that he should become the owner of any part of this stock in the event he accepted the proposition to purchase the 346½ shares.

The answer was a denial of the averments of the petition, and after the case had been prepared for trial, the chancellor dismissed the petition of Ferguson, and he appeals.

The original proposition submitted by Ferguson to Akers is in the record, and it shows that the entire proposition was written on one side of one sheet of paper, which Ferguson admits he signed. The only evidence in the record relating directly to the transaction is the testimony of Akers, Ferguson and John W. Barr, the president of the trust company.

Ferguson testified, in substance, that when the paper containing the proposition was handed to him, he signed his name to it without reading the second paragraph and without understanding what it contained; that at the time he was in bad health, and knowing that he had not proposed to sell any stock except the 346½ shares, supposed that the paper was confined to this proposition, and attached his signature without giving any attention to the last paragraph. It further appears from his evidence that the matter of the sale of this 346½ shares had been discussed between the parties, but, according to his version of the transaction, it was at no time contemplated or agreed that his interest in the 448½ shares should be sold. It was further shown that Ferguson did not write this paper, nor does the record disclose who did write it.

On the other hand, Akers testified very positively that in the verbal negotiations preceding the submitting of the written proposition, it was distinctly understood that his purchase of the 346½ shares, if he did purchase them, should carry with it all the interest of Ferguson in the 448½ shares. That he would not have purchased the 346½ shares except for the fact that he would get with it the interest in the 448½ shares.

Briefly, the evidence of Akers and Ferguson concerning the negotiations preceding the submission of the written proposition, is as conflicting as evidence could well be. The testimony of John W. Barr does not throw

any decided light on the transaction. The substance of it is that in the verbal negotiations, Akers expected to get the interest of Ferguson in the 448½ shares, while Ferguson was proposing to sell only the 346½ shares. He further says that the contract was not closed in his presence, and he did not know what agreements or arrangements the parties entered into after the conversations that took place in his presence were ended.

As we look at the matter, Ferguson is attempting, by his own evidence, supported by some unsubstantial circumstances, to set aside a writing which he admits he signed, and we do not think his evidence and the supporting circumstances are sufficient to overthrow this paper. The meaning and purpose of the paper is perfectly plain. The second paragraph occupies more space on the sheet of paper on which the proposition was written than does the first paragraph, and the evidence is not sufficient to show that any fraud was practiced in obtaining the paper or that Ferguson should have relief on the ground that its execution was a mistake. Ferguson had this paper in his possession. He read part of it, and he could have read the whole of it, if he had wanted to. If he had read all of it, he could not have failed to understand its meaning and effect. As we have often written, it requires the clearest and most convincing evidence to overcome the terms of a written agreement. Western Mfg. Co. v. Cotton and Long, 126 Ky., 749; Crawford & Gatlin v. Livingston, 153 Ky., 58; J. I. Case Threshing Machine Co. v. Mattingly, 142 Ky., 581; McGregor v. Metropolitan Life Ins. Co., 143 Ky., 488; United Talking Machine Co. v. Metcalf, 164 Ky., 258.

The further argument for the appellant is made that the chancellor should have submitted to a jury the issue made by the pleadings that there was no consideration for the transfer of the 448½ shares of stock. It may be admitted that the plea of no consideration is a common law issue which the party making the plea is entitled to have heard by a jury; but no error was committed in failing to submit that issue in this case, because if the jury, disregarding the weight of the evidence, had found that there was no consideration, the chancellor, in making up his judgment, would have been compelled to disregard the verdict.

Finding no reason for disturbing the judgment appealed from, it is affirmed.