## Brandenburg v. W. T. B. Williams & Sons, Bankers.

(Decided March 18, 1932.)

H. M. SHUMATE, SHUMATE & SHUMATE and EZART ASH-CRAFT for appellant.

R. R. FRIEND for appellee.

Opinion of the Court by Judge Perry—Affirming.

In 1899 a corporation was formed in the name of W. T. B. Williams & Sons, Bankers, which conducted a banking business in Irvine, Estill county, Ky., from that time on with W. P. Williams employed and acting as its cashier from its organization up until January 1, 1928.

This action was brought against the bank in its corporate name of W. T. B. Williams & Sons, Bankers, to recover upon some five notes, aggregating in all $7,344.96, which had been executed and delivered to H. C. Brandenburg and signed "W. T. B. Williams & Sons by W. P. Williams."

The plaintiff in his petition alleged, in substance, that the money for which these notes were given was sent to the bank and paid to it as such, and that the word "Bankers" after the signature of the maker was omitted by fraud or mistake. The answer controverted the allegations of the petition.

Upon some proof being taken, amended petitions were filed, seeking reformation of the instruments, or notes, sued on, and also recovery against the defendant

bank for money had and received. Upon proper pleadings, the issues were joined, and the case transferred to equity and proof taken.

The facts shown by the proof are these:

Quite a considerable part of the record furnishes the testimony of the parties and witnesses as to transactions and dealings had between the appellee bank, M. Brandenburg & Bro., and W. T. B. Williams & Sons between and during the years 1914 and 1921, all of which dealings appear to have been satisfactorily and fully adjusted and settled between them by the year 1921, and which have slight, if any, direct bearing upon the question presented upon this appeal, which arose out of later transactions had between H. C. Brandenburg, W. T. B. Williams & Sons, Bankers, and W. T. B. Williams & Sons extending over a period of years from the latter part of 1921 until about 1929.

The partnership of M. Brandenburg & Bro. was composed of Marion Brandenburg and H. C. Brandenburg, the appellant. For some years prior to 1921, it conducted a merchandise and trading business in Owsley county, Ky. This firm dissolved its partnership in 1921, when the appellant, H. C. Brandenburg, moved to Rocky Gap, Va., where he engaged in other business, and it was from Rocky Gap that he conducted these later money-lending transactions by correspondence with W. P. Williams at Irvine, Ky., out of which loans grew the five notes in suit.

The evidence is that about 1915, while the Brandenburg firm was operating its business in Owsley county, upon the representations of a visiting salesman named Wilson made them that the appellee bank was then paying five per cent upon time deposits, one of the Brandenburgs visited the bank to investigate Wilson's report, and, upon satisfactory information had, the Brandenburg firm thereafter, upon some two or three occasions, sent money to the bank by Wilson for making such time deposits with it, and received from the bank in due course the bank's time certificates in customary form, signed by "W. P. Williams, Cashier," acknowledging the bank's receipt of the money deposited and that it would pay interest thereon at the rate of four per cent per annum.

It appears that the Brandenburgs did, in addition to making such time deposits with the bank, thereafter open up a business or general checking account with the

bank, upon which it made regular deposits through checks, and received from the bank, pass book, deposits slips, and regular statements of the account as customary. It also appears that, during this earlier period (1915 to 1921), the Brandenburgs also had dealings with W. T. B. Williams & Sons, a realty partnership. This partnership had been organized about 1903 by the brothers Tom Williams, W. P. Williams, and George Williams for the purpose of trading and dealing in real estate located in the town of Irvine and the county of Estill; that in the conduct of such business W. P. Williams had been placed and left in charge by his brothers of the active management of its affairs, which consisted of acquiring and maintaining its considerable real estate holdings, mainly on borrowed money. It appears also that this realty partnership was a regular customer of, and carried its own bank account with, the appellee bank during all the years in question, upon which account it, just as other customers of the bank, made its deposits and drew its checks in the regular course of its business.

It appears that the Brandenburg firm had made loans in considerable amount to this partnership, and, upon or about the time of its dissolution in 1921, it drew a check upon the bank for $10,000 in payment of real estate it then bought. Upon the presentment of the check to the bank, it was paid by applying thereto $600 then standing as a balance upon their bank account and by charging the remaining $9,400 to the account of W. T. B. Williams & Sons, which it appears was at that time indebted to the Brandenburgs for such amount for money alleged loaned the partnership.

Some months later in that year, or about the first of 1922, the appellant, who had moved to and was then living in Virginia, sent to W. P. Williams a sum of money, and at subsequent dates during the years following sent further amounts, for which he received notes signed "W. T. B. Williams & Sons by W. P. Williams," bearing 7 and 8 per cent interest. W. P. Williams testifies that these loans were made him on behalf of W. T. B. Williams & Sons, a partnership. Appellant states in his testimony that they were mailed to W. T. B. Williams & Sons, Bankers, as loans to it, and for which he thought the notes returned him therefor were sent by and as the notes of the bank.

W. P. Williams continued to be and to act as the cashier of the appellee bank, and also as the general manager of the partnership, W. T. B. Williams & Sons, up until January, 1928, when he was retired as cashier of the bank.

These notes were renewed from time to time, and were eventually represented by the five notes sued on. Three of the old notes which were renewed appear in the record as exhibits, together with such correspondence as the parties preserved regarding these transactions. All of these transactions were had entirely between the appellant, H. C. Brandenburg, and W. P. Williams, who were acquaintances and correspondents during this period of years from 1921 to 1929, during which time these transactions were arranged between them and the notes in suit, or their renewals, issued for the money thus sent by the appellant. Upon the nonpayment of these notes in question in 1929, the appellant brought this action to recover from the appellee bank thereon.

These transactions, it satisfactorily appearing from the evidence, having been handled exclusively by correspondence between the appellant, H. C. Brandenburg, and W. P. Williams, at such time the cashier of W. T. B. Williams & Sons, Bankers and also the acting manager of W. T. B. Williams & Sons, a real estate partnership, it must follow that the case at bar will have to turn largely upon their testimony, supported or contradicted, as the case may be, by the documents and writings in evidence exchanged between them in the course of these transactions.

The appellant states that in these repeated dealings had by him with W. P. Williams by letters written from his home in Virginia to W. P. Williams at Irvine, Ky., he thought he was dealing with the bank through Williams as its cashier and did not know that he was an officer or partner of, or acting in behalf of, W. T. B. Williams & Sons, a partnership, or that there was such a partnership, or that there was any other business having that name or title except the appellee, W. T. B. Williams & Sons, Bankers; that, acting upon such belief, he had from time to time accepted the notes signed "W. T. B. Williams & Sons by W. P. Williams," as notes of the bank, and that he had sent the money for which these notes were given him from time to time addressed to W. T. B. Williams & Sons, Bankers, or that "to the best of his knowledge" he sent the moneys to the bank.

It is also in evidence that during this period of time in which he was carrying on this correspondence and conducting these money-lending transactions with W. P. Williams, he was concurrently sending money for time deposit to this bank, and that he received from the bank, for such time deposit remittances made it, their ready acknowledgment, accompanied by the bank's time certificates, signed by "W. P. Williams, Cashier" and bearing interest at 4% per annum. So far as appears in the evidence, all money sent by him to the bank for time deposit with it were thus acknowledged by the bank by its certificates issued him therefor, signed by its officer, W. P. Williams, Cashier.

On the other hand, it appears by the testimony of W. P. Williams, the only party with whom Brandenburg dealt in making these loans for which the notes in suit were given and signed by W. P. Williams for W. T. B. Williams & Sons, that these note transactions were had between himself and appellant as matters of their personal business, in which he borrowed the money, not for the bank at its customary 4 per cent rate of borrowing, but for his partnership and upon its notes given therefor, wherein almost the double rate of 7 or 8 per cent interest was promised to be paid and that such notes were duly signed by him, not as the notes of the bank, but under the title and name of the partnership, W. T. B. Williams & Sons, by him as W. P. Williams individually, or as partner, and at any rate not W. P. Williams, Cashier, by which latter title he was accustomed to sign, and did sign, the loan certificates or the engagements of the bank. In support of his testimony, he files as exhibits therewith the letters and envelopes preserved, which had been employed in his correspondence with the appellant, and which tend to support his testimony given as to the way and the manner in which these transactions were had and conducted between the appellant and himself, and which exhibts in like manner tend to contradict the testimony of appellant that he sent these loan remittances to the bank in envelopes addressed to W. T. B. Williams & Sons, Bankers.

Williams' testimony, as well as the evidence of the named exhibits supporting it, tend to show that these loan remittances were sent to Williams by appellant in self-addressed envelopes, which had been sent to appellant for forwarding such remittances to him, addressed

W. P. Williams "private," or W. P. Williams "personal," Irvine, Ky., and that they were not sent to W. T. B. Williams & Sons, Bankers, at Irvine, Ky., as testified by appellant.

Appellant further testifies that he did not know that there was any difference in the business names or titles of W. T. B. Williams & Sons, Bankers, and W. T. B. Williams & Sons, and yet it is shown by the exhibits of the bank's time certificates, as well as the partnership notes in suit, or the earlier canceled notes, of which the notes in suit were renewals, that appellant concurrently, during the 1921 to 1928 period, held the written instruments of each debtor, where on the face of each its own proper title and business name clearly appeared, the time certificate filed in exhibit being in this form:

"No.

"W. T. B. Williams & Sons, Bankers,

Irvine, Ky.,

"This certifies that ———— has deposited in this Bank, ———— Payable to self on the return of this Certificate properly endorsed, with interest at 4 per cent, per annum if left 6 months.

"Not Subject to Check

"W. P. Williams, Cashier,"

—whereas, the partnership note held by appellant at the same time was in this form:

"————                          Irvine, Ky.

"Twelve months after date we promise to pay to the order of H. C. Brandenburg ———— Dollars.
"Negotiable and payable at W. T. B. Williams & Sons, Bankers, Irvine, Ky., value received, with interest at the rate of —— per centum per annum until paid. Endorsers waive demand, protest, notice of protest, and all legal diligence to enforce collection.

"W. T. B. Williams & Sons.
"By W. P. Williams."

—the two instruments reasonably bringing to his mind and attention that they were the written obligations to

pay of different makers, both in respect to the difference in the signatures of the makers affixed thereto as well as in the difference of interest rates provided in the two instruments, the notes of W. T. B. Williams & Sons bearing practically double interest at the rates of 7 and 8 per cent as against the bank's 4 per cent certificates. These differences between the two instruments in terms and signatures were reasonably patent and capable of so calling the attention of the holder to their unlikeness as to put him on notice and inquiry, both as to why the same maker, a corporation, would differently sign its money obligations as well as why it would, at the same time, undertake to pay a rate of interest upon money borrowed upon its notes almost, if not quite, double the rate paid on its time deposits.

From a careful study of the record and mature consideration of appellant's claim, based upon the evidence therein presented, we are induced to conclude that appellant was not justified in shutting his eyes or in refusing to consider or investigate these notices given and thus afforded him that the notes received by him from W. P. Williams were not those of the bank, W. T. B. Williams & Sons, Bankers, signed by its cashier, but of another maker, to wit, W. T. B. Williams & Sons, signed by W. P. Williams personally, and as further given are we inclined to conclude by the very effort and care with which, through the use of self-addressed envelopes sent appellant by Williams, the parties conducted their correspondence, that they evidently desired that any remittances sent by the appellant should not be received by the bank or other of its officers, but by W. P. Williams, and that their object was to thus confine the remittances to W. P. Williams alone and personally. Such a course of dealing is not usual, nor well comports with appellant's claim that he was dealing with W. P. Williams as an officer or agent of the bank, upon business of the bank, but rather successfully controverts appellant's claim that in these matters so conducted by him with Williams it was his intent to deal with Williams as the agent of the bank or with him as acting within the scope, or apparent scope, of his authority and in the course of his employment by the bank.

Appellant, upon discovering that he could not recover on the notes sued on as the notes of the bank, for the reason that they were not the bank's notes, sought their reformation upon the grounds that the appellee, in

failing to issue him its notes, properly executed as such, for the moneys alleged loaned it, perpetrated a fraud upon him, or that the same was due to mutual mistake made in the drawing of these notes, and also pleaded that appellee was estopped from denying its liability to him for the amount loaned it, evidenced by the notes, because or in that same grew out of transactions had with Williams as its agent, and thus with appellee, and that appellee should be held to account therefor as for money had and received by it.

As to the claim of appellant asking for reformation of the notes, upon the ground that they had been executed through mutual mistake or fraud, the appellant has failed to produce evidence, either in quantity or quality, supporting such claim. He undertakes very unsatisfactorily to give the circumstances attending his manner of making these loans, and acceptance of the notes in suit sent him therefor, and his testimony as to this is directly opposed to and in conflict with that of W. P. Williams, as well as contradicted by the exhibits filed in evidence by him, themselves serving to show some of the circumstances attending the making of these loans. We do not find where the appellant attempts to show mutual mistake made in the execution of the notes, and he signally fails to show or connect the bank with the fraud complained of, by such clear and decisive character of proof as is uniformly and generally declared requisite in order to reform the terms of written instruments. Proof necessary to reform the terms of written instruments must be full, clear, and decisive, or as said in Vanover v. Justice, 174 Ky. 577, 192 S. W. 653, 655:

> "The rule is thoroughly established that, before a written obligation will be reformed or rescinded upon the ground of fraud in its execution, the fraud must be made to appear by the clearest and most convincing proof," and, further, we quote from the case of Ferguson v. Akers, 165 Ky. 289, 176 S. W. 1149, 1150, as particularly applicable to the case at bar, wherein the court said: "Briefly, the evidence of Akers and Ferguson concerning the negotiations . . . is as conflicting as evidence could well be. . . . As we look at the matter, Ferguson is attempting, by his own evidence, supported by some unsubstantial circumstances, to set aside a writing. . . .

We do not think his evidence and the supporting circumstances are sufficient to overthrow this paper."

Further, we conclude that the appellant must fail upon his claim that the appellee bank should account to him for the amounts remitted W. P. Williams, as set out in the notes, upon the common count for "money had and received," for the very practical and sufficient reason that it is nowhere shown that the appellee did ever have or receive this money, but the evidence tends to show that it was received from appellant by W. P. Williams, and was had and applied by Williams as a credit and deposit upon the partnership bank account carried with the appellee by the partnership W. T. B. Williams & Sons, and by it checked out and used, unless, of course, appellant can maintain the position that the bank is liable for the moneys loaned by him to Williams, regardless of whether he was acting as its agent in his official capacity or independently and outside of his employment, but because Williams was, at the time of receiving the money, cashier of the bank, or, by virtue of his agency status in the bank, the bank became liable for the moneys however received by him. Such claim, if made by appellant, we deem wholly without merit.

Both appellant and appellee have each submitted herein briefs evidencing rare skill and fine effort in presenting their respective arguments and claims made in behalf of their clients. Appellant has thus presented at length a very extended discussion and comprehensive list of the authorities which he conceives support his claim that he is entitled to a reversal of the chancellor's judgment appealed from. Among numerous statements of the rule he urges is applicable to the case at bar, and recited in his brief, is the declaration thereof, as found in the case of Bank of Kentucky v. Schuylkill Bank (1846) 1 Pars. Sel. Eq. Cas. (Pa) 180, a suit based on the fraud of the cashier of the appellant bank, wherein this court said:

"That the Kentucky Bank was answerable, in some form, for the frauds of their authorized agent, we cannot entertain a doubt. The general rule on this subject is that every principal is held liable to third persons, in a civil suit, for the frauds, deceits, concealments, misrepresentations, torts, negligences, or other malfeasances and omissions of duty, of his

agent in the course of his employment; although the principal did not authorize or justify, or participate in, or indeed know of such misconduct, or even if he forbade or disapproved of them. . . . In any such case, the principal holds out his agent as competent and fit to be trusted; and thereby in effect warrants his fidelity and good conduct in all matters of the agency.''

Also appellant cites the case of Engen v. Merchants' & Mfrs.' State Bank, 164 Minn. 293, 204 N. W. 963, 964, 43 A. L. R. 613, in which case the plaintiff left an order with the president of the defendant bank for ''bankable'' securities, and the latter fraudulently sold him worthless securities owned by another institution in which he was interested. The defendant bank was held to be liable for the fraud, though it received no benefit from the transaction, as the plaintiff had dealt with the president as the defendant's officer, and the latter acted within the apparent scope of his authority. The court in applying the rule said:

''The rule which fastens liability upon a corporation for the wrongful and unauthorized act of an officer is not confined to cases where the act is done in furtherance of the business of the corporation. A corporation selects its officers and places them in charge of its business. If one of them is unfaithful to his trust and, while acting within the apparent scope of his authority, he perpetrates a fraud on an innocent third party, the corporation is liable notwithstanding the fact that the officer was really acting for his own benefit and not for the benefit of the corporation.''

Appellant further recites numerous cases of this court, wherein this just and fair rule of respondeat superior was held applicable and proper to the matters therein presented, and with the statement of the rule, as well as the application thereof, in the cases thus quoted or cited we find ourselves in full accord and sympathy, but we are of the opinion that they are clearly distinguishable from the case at bar in that there was ample evidence furnished by the record herein from which the chancellor could well find that the appellant did not deal either with the appellee bank, in extending

these loans to W. P. Williams, or with W. P. Williams as its cashier and agent therein, or as acting within the scope of his authority, real or apparent, or that W. P. Williams at the time either pretended or claimed he was acting for or on behalf of the appellee bank or in the conduct of its business, or that from the evidence, did appellant have the right to so believe, but rather was then acting in the conduct of his own business, upon a money-borrowing matter, separate and distinct from the business of the appellee bank, and with which, as stated by Williams, "the bank had nothing to do," and, where the negotiations regarding this business were carried on privately between Williams and appellant in envelopes addressed to Williams and marked "private" or "personal," that they might keep their money, and high interest-bearing loans, their private affair.

However, even were we, from our consideration of the record, left in doubt as to the propriety of the chancellor's finding and ruling herein, yet, observing the rule of law obtaining in this jurisdiction as applicable thereto, would we have to conclude that we are quite without the right to disturb the Chancellor's finding of fact herein, for the reason that it is not against but is amply sustained by the weight of evidence disclosed by the record.

Therefore, perceiving no error committed in prejudice of the substantial rights of appellant, and for the reasons indicated herein, it follows that the judgment of the lower court will have to be and is affirmed.